JAMES CROPSEY *vs.* BRUCE MCKINNEY, MARY B. MCKINNEY, WILLIAM BANKS and WRIGHT POMROY.

STEPHEN A. GRIFFIN, JAMES CROPSEY and HENRY C. GLINSMANN *vs.* WILLIAM BANKS and WRIGHT POMROY.

THE SAME *vs.* THE SAME.

A mere creditor at large, without any judgment against his debtor, or lien upon his property or right to a preference in payment out of it, cannot maintain an action against such debtor and his assignees, to set aside an assignment of such property, executed by the debtor.

Where a husband absents himself from his wife for the space of five successive

Cropsey *v.* McKinney.

years, without being known to her to be living during that time, and she then marries another person, in good faith, supposing her former husband to be dead, her second marriage will be void only from the time its nullity shall be pronounced by a court of competent jurisdiction.

And it can be declared void only on the application of one of the parties to it, during the lifetime of the other. It cannot be declared void collaterally, after the death of the first husband, in actions instituted by creditors.

By marriage the husband becomes vested with a right to all of the wife's goods and chattels, and to her earnings, and the property acquired by her subsequently in carrying on a business in her own name.

Such a case is not affected by the acts of 1848 and 1849, giving additional rights to married women; where the question arises between the assignees of the husband and assignees of the wife.

A deed of separation, between husband and wife, if executed without any consideration, is void at law, even between the parties thereto. And it is void and of no effect, even in equity, as against the assignees of the husband, on a question arising as to the title to the property embraced therein.

The wife's covenant with her husband, in a deed of separation, being void, cannot form a consideration for the execution of the deed by him.

A deed of separation between husband and wife, by which the former relinquishes to the latter personal property and a business carried on by her in her own name, for her sole and separate use, and covenants that the property and business, and the profits of the business, shall thereafter belong to, and be carried on by her for her sole and separate use as if she were a feme sole, being executed without consideration, and without any covenant on the part of the trustee to indemnify the husband against the debts of the wife, is void even in equity, as to subsequent creditors.

The assent of the husband to his wife carrying on a business in her own name, carries with it an implied authority to contract debts, in conducting the business in her name.

And debts thus contracted, although contracted in the name of the wife, are the debts of the husband, and he is liable to be sued for them.

The husband, in such a case, has the right to make an assignment for the benefit of creditors, of the property in his wife's possession and of the business carried on by her; and such assignment will carry the title to such property, as against the assignees of the wife.

The assent of the husband that his wife shall carry on a business in her own name, does not carry with it an implied authority to her to make an assignment for the benefit of creditors.

THESE actions were heard at special term, on pleadings and proofs. The facts are detailed in the opinion of the court, and need not be here repeated.

Cropsey *v.* McKinney.

*Wm. M. Evarts* and Mr. *Thompson,* for the plaintiffs.

*F. B. Cutting* and Mr. *Smales,* for the defendants.

SUTHERLAND, J. It is necessary to state a few of the general facts of these cases, to show how they originated, the questions in them, and how they came before the court, to be argued and disposed of together and as one suit.

Mary B. McKinney (then Mary Kinney) married one Gilbert McCullom in 1825. They lived together as husband and wife until 1835, when they separated. After their separation, and in 1836 or 1837, a deed or agreement of separation was executed by them, without any trustee. In May, 1837, she commenced the business of manufacturing bedding and upholstery in Hudson street, in the city of New York, which business she carried on from that time until July 22d, 1842, under the name of M. J. Kinney. McCullom and his wife continued to live separate until his death at the Bellevue Hospital in the city of New York, July 9th, 1851. On the 22d of July, 1842, she married one Bruce McKinney, without having obtained any divorce from McCullom. After this marriage she continued her business in Hudson and Canal streets, under the name of " Mary B. McKinney." Bruce, who was a seafaring man, lived with her and assisted her in her business till 26th September, 1844, when they separated, and on or about that day a deed of separation was executed between them and one George Langdon as her trustee. Upon the execution of this deed, Bruce McKinney left and went to sea, and continued absent until the following year, when he returned to the city of New York and opened a store in the Eighth avenue, where he carried on business in his own name for a few months. After this he returned to a seafaring life again, which he continued until the execution of the assignment by him hereafter mentioned, under which the plaintiffs in the last two suits claim. After the execution of the deed of separation, when in the city, on his return from time to time from

his sea voyages, he and the said Mary lived and cohabited together as husband and wife, they having a child born in January, 1846. From the separation between them, in 1844, down to the time of the execution of the assignment to the defendants Banks and Pomroy, hereafter mentioned, the said Mary, with the knowledge and consent of Bruce McKinney, carried on the business aforesaid as a sole trader, in the name of "Mary B. McKinney," issuing business cards, buying and selling goods, giving and negotiating notes, drawing checks, taking out policies of insurance, taking and executing leases and signing receipts in that name, or in the name of Mrs. Mary B. or M. B. McKinney. On the 21st day of July, 1854, she made an assignment of all her stock in trade, property, book accounts, leasehold interests, &c. to the defendants Banks and Pomroy, for the benefit of her creditors, with preferences. On the execution of the assignment, Banks and Pomroy took possession of the assigned property.

The first of these actions was commenced by James Cropsey as a creditor, who had sold goods to Mary B. McKinney, while she was so carrying on business as a sole trader, after the execution of the assignment by her, but before the assignment by Bruce McKinney, as hereafter stated. The complaint in this action alleges that Bruce McKinney was indebted to the plaintiff in the sum of $1694.52, for goods, wares, &c. sold and delivered to him; that he was a seafaring man and was then absent on a voyage to Liverpool; that he had been for many years engaged in the business of buying, selling and manufacturing cabinet and household furniture, mattresses, bedding &c., at 228 Hudson street and 707 Broadway, and had since 1844, and previous and up to the assignment by his wife Mary B. McKinney, conducted the same in the name of his wife; that the said Mary, with the proceeds of the business, took and made in her own name leases of stores and other buildings; that the indebtedness to the plaintiff was contracted by the said Mary in supplying the necessary goods for the said trade; that she had improperly assigned to Banks and

Cropsey *v.* McKinney.

Pomroy, and was fraudulently induced to make the assignment by Banks and Pomroy, setting forth the assignment; that Banks and Pomroy took possession and sold a part of the goods at retail and then closed the store, and were about sacrificing the balance, so that the plaintiff would lose his debt. The complaint prays for a judgment for the debt, and for an injunction and receiver. The answer of the defendants Banks and Pomroy to this complaint, denies that the plaintiff sold or delivered the goods to Bruce McKinney, but alleges that they were sold to Mary B. McKinney upon her sole credit, as part of her stock in trade, and that she carried on the business in her own name and on her own credit, and denies that Bruce McKinney was indebted to the plaintiff as claimed in the complaint. The answer also denies that the said Mary was the wife of Bruce McKinney, and alleges that if the marriage relation ever existed between them, it ceased to exist in 1844, and had been renounced since then, and that Bruce had no interest in the property; that in 1825 Mary married Gilbert McCullom, and that McCullom was living at the time of her marriage with Bruce McKinney, and that her marriage with Bruce was void. The answer insists upon the title of the defendants under the assignment of Mary B. McKinney, denying all fraudulent inducements, and insists that the plaintiff cannot maintain the action, because not a creditor by judgment or decree of the said Bruce or Mary.

After the assignment by Bruce McKinney to James Cropsey, Stephen A. Griffin and Henry C. Glinsmann, the plaintiffs in the other two actions, as hereafter stated, the defendants Banks and Pomroy put in a supplemental answer to the complaint in this action by Cropsey alone, insisting upon such assignment to Cropsey and others, and the acceptance of it by them, and their claim of title under it being inconsistent with this action by Cropsey, and insisting that his complaint should be dismissed.

Some two or three weeks after the assignment by Mary B. McKinney to Banks and Pomroy, an assignment for the benefit

of creditors was prepared in New York and sent to Bruce Mc-Kinney at Liverpool, and was executed by him there, on the 15th day of September, 1854, probably with the knowledge and approbation of Mary B. McKinney, who had become dissatisfied with the claim and conduct of Banks and Pomroy under her assignment.

Bruce McKinney, by his assignment, after reciting that Mary B. McKinney his wife had, by and with his consent, been engaged in the business in New York; and had taken leases of stores and houses for that and other purposes; and that pecuniary embarrassments had resulted from the business; and that he could not meet all the debts and liabilities as they became due and payable, assigns to James Cropsey, Stephen A. Griffin and Henry C. Glinsmann, all the goods and stock in trade then or late in the store No. 228 Hudson street or in No. 707 Broadway in the city of New York, whether purchased in his name or in the name of his wife, or whether then in her possession or not; and all the leases, terms for years and chattels real, whether taken and held in his or his wife's name; and all property, claims, demands, assets and effects, belonging to the said Bruce or in which he had any interest, to be disposed of by his said assignees, and the proceeds applied ratably towards the payment of all the debts and legal claims against, and liabilities of, the said Bruce, whether incurred by his said wife in or about the business aforesaid or otherwise; except the indebtedness of the said Bruce (in and about the business carried on by his wife or otherwise) to George Johnson or George Johnson & Co., to Phelps & Kingman, and to Mellen, Banks & Pomroy, of the city of New York; who are by the assignment constituted the second class of creditors.

Subsequently actions No. 2 and No. 3 were brought by the assignees of Bruce McKinney against Banks & Pomroy. No. 2 is a replevin suit, charging that the defendants became possessed of and wrongfully obtained the goods and chattels specified, which the defendants claim under the assignment of Mary B. McKinney, of the value of $18,000. The answer

Cropsey *v.* McKinney.

denies the plaintiffs' title and ownership of the property, or that the defendants wrongfully became possessed of or detain the goods and chattels, but admits that as assignees of Mary B. McKinney the defendants took possession of goods, wares, &c., and before the commencement of the action sold and delivered a large amount thereof, and justify such taking, possession and sale, under the assignment of Mary B. McKinney.

The complaint in action No. 3, by the same plaintiffs against the same defendants, sets forth the assignment of Bruce McKinney to the plaintiffs; his marriage with Mary B. McKinney, July 21, 1842; his right to the property, trade and business conducted in the name of Mary B. McKinney at 228 Hudson street and 707 Broadway, and the leases thereof, and the improvements thereon, assigned by Mary B. McKinney to the defendants, (which assignment is alleged to be void,) and demands judgment for the possession of the premises and an assignment of the lease of 707 Broadway, and for an account of all the goods, leases and effects sold and disposed of by the defendants, and for the payment of the amounts and value to the plaintiffs. The answer reiterates substantially the matters contained in answers Nos. 1 and 2.

·The three actions were by an order of the court referred to John S. Patterson, Esq. as sole referee, on the 11th of Dec. 1856, to take the testimony in them, which might be offered by either party, and report the same to the court, subject to all legal objections at the trial. By stipulation between the parties, it was agreed that the question of the value of the property taken by the defendants, and their receipts and payments, should be waived until the court should determine whether the defendants have the legal title thereto. I deem this to be a sufficient statement of the facts, to show the questions now to be disposed of in these cases.

As to the first action, by Cropsey against Banks and Pomroy, Bruce and Mary B. McKinney, it is clear that being a mere creditor at large, without any judgment against either Bruce or Mary B. McKinney, he is not entitled to any of the equita-

ble relief asked for by him in that action. (*Reubens* v. *Joel,* 3 *Kernan,* 488.)

Being a mere creditor at large, he had no lien on the assigned property, and no right to a preference of payment out of it, though the debt and assigned property were the debt and property of Bruce McKinney, and the assignment of Mary B. McKinney to Banks and Pomroy was unauthorized and void.

I do not think that the undertaking given by Banks and Pomroy, on the dissolution of the injunction in the action, to apply so much of the proceeds of the assigned property and effects as should be sufficient to satisfy the plaintiff's claim with costs, if established in that action, against the said property and effects, affects the question ; and I think that Cropsey's acceptance of the assignment from Bruce McKinney is inconsistent with any claim to a preference over other creditors in or through this action. But I do not see why Cropsey is not entitled in the action to a judgment against Bruce McKinney for his debt.

As to the other two actions, the only question before me now is the question of title, as between the assignees of Bruce and the assignees of Mary B. McKinney. I think the decision of this question depends entirely upon whether the marriage between Bruce and Mary was absolutely void or voidable only, McCullom, her first husband, being alive when the marriage ceremony took place between her and McKinney. And whether her marriage with McKinney was void, or voidable only, I think depends upon the questions of fact, as to which the great mass of the testimony in these cases was taken, whether Gilbert McCullom absented himself for five years, prior to July 22d, 1842 ; and whether Mary his wife married McKinney on the 22d July, 1842, not knowing McCullom to be living during the five years prior to such marriage, (but supposing him to be dead.)

If McCullom had absented himself " for the space of five successive years" prior to her marriage with McKinney, without being known to her to be living during that time ; and

she married McKinney in good faith, supposing McCullom to be dead, then by the statute (2 *R. S.* 139, § 6) her marriage with McKinney will be void " only from the time its nullity shall be pronounced by a court of competent jurisdiction;" otherwise it was at common law and by statute absolutely void. (2 *R. S.* 139, § 5.)

If her marriage with McKinney was and is voidable only, then I think the title of the assignees of Bruce McKinney to the property and proceeds of the property in question is good as against the assignees of Mary B. McKinney.

As McCullom is dead, this marriage, if voidable only, and it and its issue are within the protection of the statute, can be declared void only on the application of one of the parties to it, during the lifetime of the other. (2 *R. S.* 142, § 22.) It cannot be declared void collaterally, in these actions or either of them.

If her marriage with Bruce McKinney was contracted by her in good faith and under circumstances, which by the statute makes it voidable only, then as between the assignees of Bruce McKinney and the assignees of Mary B. McKinney, and as to the question of title between them in these actions, that marriage was and is valid, and she and Bruce McKinney were and are husband and wife. If the marriage is voidable only as between Bruce and Mary B. McKinney, it follows, I think, that as between these parties, as respects the title to the assigned property in these actions, the question is precisely the same as if McCullom had been dead, when the marriage with Bruce McKinney was contracted.

Without reference to the deed of separation between Bruce and Mary B. McKinney and Langdon as her trustee, in 1844, Bruce McKinney by the marriage was vested with a right to all of her goods and chattels and to her earnings, and the property acquired by her in the business since. (2 *Kent,* 143. 3 *T. R.* 631.   *Lovett* v. *Robinson,* 7 *How. Pr. R.* 105.   *Gates* v. *Brower,* 5 *Selden,* 205.)

I do not think that the acts of 1848 and 1849, giving addition-

al rights to married women, affect the question. Nor do I think that the deed of separation between Bruce and Mary B. McKinney, although executed by Langdon as her trustee, affects the question of title, as between the assignees of the husband and the assignees of the wife.

The deed of separation by which Bruce McKinney purported to relinquish all the property to Mary B. McKinney for her sole and separate use, and covenanted that the property and the business, and the profits of the business, should thereafter be carried on and belong to her for her sole and separate use, as if she were a feme sole, was executed by him without any consideration. The $2000 received by him as the consideration for its execution by him, was his own money before and when he received it. The deed of separation itself states that the $2000 was paid him out of the stock of goods and the profits of the business so relinquished by him to his wife. There was in the deed no covenant on the part of Langdon, the trustee, to indemnify Bruce McKinney against the debts of his wife. At law, she as a married woman was unable to contract with her husband or any other person, or to sue or be sued as a feme sole. Her covenant with her husband in the deed of separation being void, could form no consideration for its execution by him. The deed of separation being without consideration was at law void, even between the parties. It could not and did not, being void, legally vest the property in Langdon the trustee, and did not and could not divest Bruce McKinney of the property as husband, or of the right as husband to the future earnings of his wife and the profits of the business.

The following authorities are sufficient, I think, to sustain the proposition that the deed of separation was voluntary and without consideration: *Beach* v. *Beach*, 2 *Hill*, 260; *Marshall* v. *Hutton*, 8 *T. R.* 547; *Legard* v. *Johnson*, 3 *Ves.* 352.

The deed of separation being voluntary and without consideration, and void at law, it is doubtful whether a court of equity would have enforced it, even between the husband and

Cropsey *v.* McKinney.

wife, by protecting the person of the wife or the property and business, from the interference of the husband. (*Rogers* v. *Rogers*, 4 *Paige*, 516.) But conceding that as between the husband and wife, in consideration of the intemperance of the husband and under the circumstances of the case, a court of equity might so far have enforced the deed of separation; yet I am of the opinion that the deed must be considered void and of no effect even in equity, as against the assignees of the husband, on the question of title to the property in dispute.

The deed of separation being without consideration and without any covenant on the part of the trustee to indemnify the husband against the debts of the wife, if good in equity between the husband and wife, was, I think, void even in equity as to the subsequent creditors. The assignees of the husband are creditors themselves, and as assignees are trustees for all the creditors.

Notwithstanding the deed of separation, the property and business remained the property and business of the husband, as to the creditors. The evidence shows that the business was carried on in the name of Mary B. McKinney with the assent of Bruce McKinney. The assent to her carrying on the business in her name, carried with it an implied authority to contract debts in conducting the business in her name.

The debts contracted in the business, although contracted in the name of Mary B. McKinney, were the debts of Bruce McKinney and not the debts of Mary, and he and not she was liable to be sued for them. (*Lovett* v. *Robinson*, 7 *How. Pr. Rep.* 105, *and Gates* v. *Brower*, *supra*. *Riley* v. *Suydam*, 4 *Barb.* 222. 2 *Bright's Husband and Wife*, 300, 301, §§ 20, 21.)

From his liability for the debts, and from the fact that as to the creditors at least he had the legal title and right to the property, and not Langdon the trustee, I think it follows that Bruce McKinney had the right to make an assignment for the benefit of the creditors, and that his assignment is valid and carried the title to the property, as against the assignees of

the wife, notwithstanding the deed of separation. But if the deed of separation ever had any validity as between Bruce and Mary McKinney, it would appear to have been subsequently abandoned or rescinded, by their cohabitation and conduct. (*Carson* v. *Murray,* 3 *Paige,* 483.)

My conclusion is, that if in fact the marriage with Bruce McKinney was contracted in good faith, she supposing McCullom to be dead and under circumstances which make it voidable only, under the statute, the assignees of Bruce McKinney have a good title to the property and the proceeds of the property in question, as against the assignees of Mary B. McKinney. The property or proceeds of the property, under his assignment, will go where it ought to go, to pay the debts contracted in the business.

The assignment of Mary B. McKinney was void as her act. She was disabled by her coverture from making an assignment or any other contract which would be valid as her act. Her assignment can only be upheld upon the ground that it was executed under an implied authority from Bruce, and that it is his assignment.

But it is absurd to say that the assent of the husband, that the wife should carry on the business in her name, carried with it an implied authority that she might make an assignment for the benefit of creditors; the property, debts and legal liabilities being his, not hers.

To return then to the question whether the marriage with McKinney was contracted in good faith, and under circumstances which give the parties and their children the benefit of the statute, the decision of which question of fact I have endeavored to show, must determine the question of title to the property as between the assignees of Bruce and the assignees of Mary B. McKinney. Upon this question of fact a vast deal of testimony was taken. After a careful examination of the evidence and due consideration of the arguments of counsel, I have come to the conclusion that the marriage with Bruce McKinney was contracted by Mary in good faith, she

believing McCullom to be dead, and after an absence of Mc-Cullom for five successive years and without her having known during that time that McCullom was living.

Bruce and Mary B. McKinney were both sworn as witnesses before the referee, and both were objected to as not competent. I suppose neither of them was a competent witness in the first action, to which they are both parties; but their testimony was of no importance in that action. I do not see why they were not both competent witnesses in the other two actions, to which they are not parties. Certainly any resulting interests under the assignments would not render them incompetent.

Mary B. McKinney swears that she separated from McCullom in September, 1835; that the last time she ever saw him was in May, 1837; that when she married McKinney, July 22, 1842, she had not heard and did not know of McCullom's being alive since she saw him in May, 1837; that she supposed him to be dead; that he was intemperate and had fallen off of the docks previous to May, 1837; that in June, 1837, she read an account in the newspapers of a body that had been taken out of the water, that had been in the water for some time; and that from the description she supposed it to be the body of McCullom, and went to see it in Montgomery street, but when she got there found it had been buried the day before; that from the description which she received of the clothes on the body, they corresponded with the clothes McCullom wore when she last saw him; that she supposed the body was the body of McCullom. Several witnesses corroborate this testimony of Mary B. McKinney. There is a good deal of testimony on the other side, to show that McCullom was seen in New York from time to time between May, 1837, and July 22, 1842; but it is not satisfactorily proved, I think, that Mary B. McKinney saw him or knew or was informed that he was alive between those dates. If Mary B. McKinney knew or supposed that McCullom was alive when she married Mc-Kinney, she not only committed a great crime when she mar-

Cropsey *v.* McKinney.

ried McKinney, but has added to that crime another great one in these suits. A presumption that she has committed these crimes should not be indulged in on slight grounds.

My conclusion on the whole case is, that as between the assignees of Bruce and the assignees of Mary B. McKinney, his assignees are entitled to the property and proceeds of the property taken by Banks and Pomroy under her alleged assignment; and there must be a reference to Mr. Patterson, the same referee who took the testimony in these cases, to ascertain the value of such property and to take an account of their receipts and payments on account of the same, under the stipulation of the parties.

As it appears that McCullom was in fact alive when the marriage with McKinney was contracted, and did not die until June, 1851, and as it appears that he had a child by Mary B. McKinney which is supposed to be now living, and as a question might be raised whether, notwithstanding the second marriage and the deed of separation between McCullom and Mary B. McKinney, his personal representatives or child may not have some right or interest in or to the property, or the proceeds of the property in question, the assignees of Bruce McKinney must take the property and its proceeds subject to such claim or interest, if any there be.

Neither the representatives of McCullom nor his child are parties to these actions, and I have not examined any such question.

[NEW YORK SPECIAL .TERM, October 21, 1859. *Sutherland,* Justice.]