WILSON H. GARDENIER, RESPONDENT, *v.* EDWARD FUREY AND ELIZABETH C. FUREY, APPELLANTS.

*Confession of a judgment by a married woman — what representations by the husband and wife, as to joint ownership of real estate owned by them as tenants of the entirety, are insufficient to justify a judgment declaring the wife the owner of an undivided one-half as a tenant in common.*

Judgment having been entered in the plaintiff's favor in the Oswego county clerk's office on July 17, 1886, upon a confession by the defendant Elizabeth C. Furey, which was verified on the same day and recited that the claims therein acknowledged were for her benefit, and were to be a lien and charge upon her separate estate, an action in the nature of a creditor's bill was brought by the plaintiff to have the judgment declared a lien upon her interest in certain real estate situated in the city of Oswego. In this action it appeared that the premises were conveyed, on September 16, 1870, to the defendants in this action, who then were, and ever since have been, husband and wife, and that the parties took possession of the premises and resided there during 1886 and 1887.

It was also shown that the plaintiff, who was employed by the defendant Elizabeth to commence an action against her husband for a divorce or limited separation, drew an affidavit for her to swear to, which, after referring to the deed, stated that her interest acquired thereby, " as she is advised by her counsel, and as she verily believes, is wholly unavailable and valueless to her as a means of support and present maintenance, or as a present legal interest upon which she can obtain by mortgage, or in any manner, any sum of money whatsoever." The defendant Elizabeth stated to the plaintiff that she owned a half interest in the house and lot where they lived.

The plaintiff testified that he did not know that she had any property until he saw her husband, on July 15, 1886, at his house on the premises, which was then occupied by him, and that the husband stated that his wife owned one-half of

the place, and a witness, whom he took with him, testified that the husband said that they owned it jointly, or something to that effect, that the property belonged to them jointly together.

The judgment, which was entered in favor of the plaintiff, declared that, as between the parties to this action, the defendant Elizabeth was the owner of an undivided one-half of the said premises, to the same extent and meaning as if the said defendants were tenants in common, and that the judgment of the plaintiff was a lien thereon, which he might enforce by levy and sale on execution.

*Held,* that the judgment should be reversed as the representations were entirely insufficient to justify it.

That the fact that the plaintiff found the husband in possession of the premises was *prima facie* evidence that he was the owner of the property.

That the language used in the representations, that the parties were jointly owners of the property, if considered sufficient to overcome this *prima facie* evidence, certainly required the plaintiff, as a prudent man, before relying upon the representations as to the title to the real estate, to examine the record and discover therefrom precisely how it was situated.

APPEAL from a judgment in favor of the plaintiff, entered in the office of the clerk of the county of Oswego on the 30th day of April, 1888.

On the 16th of September, 1870, a deed was executed by one Allen and others of certain premises situated in the city of Oswego, to the defendants, who then were and ever since have been husband and wife, conveying the premises " to the said parties of the second part, their heirs and assigns," which deed was recorded in the clerk's office of Oswego county. The parties took possession and resided on the premises during the years 1886 and 1887. The plaintiff took a confession of judgment from the defendant Elizabeth C. Furey, which was verified on the 17th day of July, 1886, for $150 damages. The judgment was entered in the Oswego clerk's office on the 17th day of July, 1886. The confession was for services as an attorney and counselor rendered and to be rendered, and the confession of judgment states, viz. : " The claims herein acknowledged are for my benefit and are to be a lien and charge upon my separate estate. This judgment, by me confessed, is to secure existing and contingent liabilities to the amount of said $150. Signed E. C. Furey, defendant."

In November, 1886, the plaintiff issued an execution upon the judgment to the sheriff of Oswego, which was returned wholly unsatisfied on the 11th of January, 1887. This action was in the nature

of a creditor's bill to have the interest of the parties in the premises declared to be that of tenants in common.

As a matter of law, the trial judge found, viz.: "That the plaintiff is entitled to have his judgment declared a lien on the said premises and real estate to the extent of the ownership in fact of the said Elizabeth therein. (2.) That the plaintiff is entitled to a judgment and decree declaring that, as between the parties to this action, the said Elizabeth is the owner of an undivided one-half of said premises to the same extent and manner as if the said Elizabeth and Edward were tenants in common thereof, and that the judgment of the plaintiff is a lien on such undivided one-half, and that the plaintiff has the right to enforce the lien of such judgment, by levy and sale on execution in the ordinary way, in the same manner and with the same force and to the same extent, as if the said Elizabeth and Edward were, under their deed, tenants in common."

*J. B. Higgins,* for the appellant.

*W. H. Gardenier,* respondent in person.

HARDIN, P. J.:

Before the confession of judgment, which was drawn by the plaintiff, was executed by the female defendant, she had employed the plaintiff to commence an action against her husband "for divorce or limited separation." From the evidence given upon the trial, it is difficult to determine precisely what amount of plaintiff's claim originated before the judgment by confession was taken by him from the female defendant. In August, 1886, the plaintiff drew an affidavit for the female defendant to swear to, and which was to be used upon the motion, which referred to the deed given to the husband and wife; and the affidavit stated, after such reference to the deed, "a copy of which is hereto annexed, marked A, but which interest, as she is advised by her counsel, and as she verily believes, is wholly unavailable and valueless to her as a means of support and present maintenance, or as a present legal interest upon which she can obtain by mortgage, or in any manner, any sum of money whatsoever, either for her support or maintenance or to meet the necessary expenses to prosecute this action." It is quite apparent that the plaintiff, when he drew the affidavit from which the quota-

tion has been made, knew what the record and legal title were to the premises in question. In that affidavit it was also stated that she was upon the premises so conveyed, and that the defendant was occupying the barn on the premises. The plaintiff testified that he " did not know she had any property until I saw him " (the husband); he then details an interview which he had with the husband on the 15th of July, 1886. Before he had that interview, he had drawn up the confession of judgment, but the same had not been executed according to his testimony. Before that time the plaintiff testified he had some conversation with the defendant on the subject of her interest in the real estate in question, and that she had told him " she owned a half interest in the house and lot where they lived." When asked if he believed her statement, he answered, viz.: " I didn't believe * * * I was simply agnostic on the subject." He adds that he drew up the confession of judgment, partly upon what she told him, and that she told him she had other property besides the real estate; " she claimed she owned part of the colts, pigs, geese — everything." " She claimed she owned half of the personal property." It appears that when he reached the house on the premises occupied by Edward Furey he found him sick, and that he told Edward that she proposed to give him security; and the husband replied, " he did not care what she did with her property, or words to that effect; * * * she could do as she pleased with her property." " He said she owns half of the place where we live; 'this place,' " he said, " if I recollect." It appears the plaintiff took with him, at the time he held the interview with the husband, Andrew J. Lewis, who, to some extent, corroborates the testimony given by the plaintiff, which we have just quoted. This witness says that, in the conversation, he heard Edward, the husband, say in regard to the property, " that they owned it jointly, something of that kind;" " he said the property belonged to them jointly together, that they both owned the property;" " Mr. Furey said his wife owned the property equally with him, if I remember."

To confront this evidence the defendant was sworn as a witness, and he testified that all that took place in the conversation alluded to, in respect to the property, was that the plaintiff " he asked me if I owned that place. I said yes. That was all that was said about the property."

There is no evidence in the appeal book as to what amount of the plaintiff's services were earned after the 19th of August, 1886. Upon the theory adopted by the trial judge, that the plaintiff was led by the statement made to him to perform the services "and that, therefore, the defendants ought to be estopped," it would seem that the services performed after the plaintiff, acquired full knowledge as he did when he drew the affidavit in August, 1886, were not performed in reliance upon any of the representations to which allusion has been made.

However, it seems to us that the representations were entirely insufficient to work the result which has been reached at the Special Term. (1.) The plaintiff found Edward, the husband, in possession of the premises; that was *prima facie* evidence that he was the owner of the property. (2.) The language used in the representations that the parties were, jointly, owners of the property, if considered sufficient to overcome the *prima facie* evidence, certainly required the plaintiff, as a prudent man, before relying upon the representations as to the title of the real estate, to examine the record and discover therefrom precisely how it was situated. The information which he had received was sufficient to put him upon inquiry. If he had made the inquiry by examining the record, he would have ascertained the true situation of the title. By force of the deed of 1870 to the husband and wife, they became tenants of the entirety. The plaintiff was entitled to possession of the property during their joint lives, and the survivor would take the whole in virtue of the grant made to them jointly. (*Beach* v. *Hollister*, 3 Hun, 519; *Bertles* v. *Nunan*, 92 N. Y., 152; *Freeman* v. *Barber*, 3 N. Y. Sup. Ct. [T. & C.], 574.) Neither could sell without the consent of the other. (*Farmers', etc., Bank of Rochester* v. *Gregory*, 49 Barb., 159; *Doe* v. *Howland*, 8 Cowen, 277.) And a contract between husband and wife, directly, was void at law. (*Cropsey* v. *McKinney*, 30 Barb., 47; *Simmons* v. *McElwain*, 26 id., 419.) In *Zorntlein* v. *Bram et al.* (100 N. Y., 12) it was held that "a deed by the wife alone would carry no title."

We are aware that by a recent statute the rule of law has been changed. (Chapter 537, Laws of 1887.) However, that statute can have no effect upon the question before us. It is apparent that a deed from the husband to the wife, at law, which attempted to

turn their estates from that of tenants by the entirety to that of tenants in common, would have been void. A careful consideration of all the evidence presented in this case bearing upon the representations made by either of the defendants to the plaintiff, has led us to the conclusion that they are inadequate to accomplish a change of the estate which was given to the defendants by virtue of the conveyance made in 1870 to them as husband and wife. It appears that when the plaintiff prepared the statement for confession of judgment, signed by the female defendant, he inserted therein the expression, " the claims herein acknowledged are for my benefit and to be a lien and a charge upon my separate estate." If, as he says, that confession of judgment was drawn before he had the conversation with Edward, he was then aware that its force could only be to apply to a separate estate of the party confessing the judgment. At that time her only interest in the real estate was that of a tenant in the entirety.

It was observed in the opinion of the learned trial judge, that a "creditor has the right to reach the interest which the judgment debtor in fact had in the property without reference to the form of the deed." We find no proof in the case showing that she paid any part of the consideration for the premises in question, or a fact as to how they were paid for, excepting such as arises from a recital in the deed, showing that the grant was made by the grantors " in consideration of four hundred dollars to them paid." Before the judgment of the plaintiff should be declared a lien upon the undivided one-half of the premises, we think there should a valid divesting of the parties to the grant of 1870 of their tenancy by the entirety, and a valid investing of it with an undivided one-half, as tenants in common. To accomplish such a result, the evidence before us is wholly unsatisfactory. We may call to mind that every parol agreement in respect to real estate is by statute declared void.

While there are certain cases in which the court will not allow the statute to be set up and used as a sword (*Ryan* v. *Dox*, 34 N. Y., 307), we think the case before us does not fall within that class of cases. Our conclusion is that the learned trial judge fell into an error in declaring the plaintiff's judgment a valid lien on an undivided one-half of the premises in question. *Wade* v. *Krumm*

(54 How., 95), is unlike the case before us, as there it appeared clearly that the consideration for the deed was advanced solely by the wife. Nevertheless, it was held that the deed vested in the husband and wife as tenants of the entirety of the premises in question. · Nor does the case of *Mattoon* v. *Young* (45 N. Y., 697), aid the appellant. The only question passed upon there was in respect to the admissibility of certain declarations by an owner of real estate at a sheriff's sale which influenced the purchaser at such sale, and the court held that the declarations should have been received, and laid stress on the circumstance that no objection was taken that the title " could not be transferred to him by parol."

Judgment reversed and a new trial ordered, with cost to abide the event.

FOLLETT and MARTIN, JJ., concurred.

Judgment reversed and a new trial ordered, with costs to abide the event.