(Surrogate's Court, Cattaraugus County. January, 1910.)

1. DOWER (§ 6*)—EFFECT OF INVALID OR INFORMAL MARRIAGE.

   Where a woman whose husband had absented himself for more than five successive years without being known to her to be living married in good faith, with the belief that he was dead, and lived with her second husband 11 years and until his death without any decree annulling the second marriage, she is entitled to the statutory exemptions and to her dower in the realty of her second husband, notwithstanding the subsequent reappearance of her former husband.

   [Ed. Note.—For other cases, see Dower, Cent. Dig. § 9; Dec. Dig. § 6.*]

2. EXECUTORS AND ADMINISTRATORS (§ 314*)—JURISDICTION OF SURROGATE—DETERMINATION OF WIDOW'S RIGHTS.

   Where part of the funds in the hands of the executor and trustee of decedent consists of rents from his real estate, the Surrogate's Court has jurisdiction to determine the widow's rights in the realty in order to make distribution.

   [Ed. Note.—For other cases, see Executors and Administrators, Cent. Dig. §§ 1274–1277; Dec. Dig. § 314.*]

In the matter of the estate of Henry McKinley. Proceedings on accounting of executor and testamentary trustee. Decree rendered.

M. B. Jewell, for executor and trustee.
Dowd & Quigley, for Rose McKinley.
Hudson Ansley, special guardian, in pro. per.

DAVIE, S. The will of decedent, dated June 11, 1906, was admitted to probate January 9, 1908, and letters were issued thereon to Henry Donnelly, executor and trustee therein named. Decedent left him surviving his widow, Rose McKinley, one daughter, Mercedes McKinley, and two grandchildren (children of a deceased son), his

only heirs at law and next of kin, all of whom are under the age of 21 years. He left an estate of $20,000 and upwards in value; a considerable portion thereof being real estate. By the provisions of the will he devised and bequeathed the entire estate to his executor and trustee, directed him to manage and control the same, with full power to sell and convey real estate, to invest the proceeds and accumulations, and to pay over from time to time such portion of the one-third part of the accumulations to each, the said daughter and grandchildren, as the trustee in his discretion might deem advisable. The trustee was further directed to transfer and convey to the grandson when he became 30 years of age one-third part of the principal of such estate, together with one-third of the accumulations, less what might already have been advanced to him. He was also directed to turn over a similar portion to each, the said daughter and the said granddaughter, when they became, respectively, of the age of 25 years. No provision whatever was made for the widow, nor does it appear that she has in any manner released or relinquished her right in the estate. Upon the return day of the citation for judicial settlement, the widow appeared and asserted her claim to one-third of the net income arising from the real estate and to such specific articles as she was entitled under the statute. Such claim is controverted by the special guardian upon the ground that, it is asserted, she was not, in fact, the legal wife of decedent nor entitled to dower in his real estate or share in his personal property.

The facts upon which this claim is predicated are somewhat peculiar. In April, 1880, the claimant was legally married to one William Minehan. She lived and cohabited with him until the year 1887, when he went to the state of Ohio in search of employment, having communication a short time thereafter with his wife but finally disappearing; and, after the year 1887, she heard nothing whatever from him and had no knowledge of his whereabouts. The issue of such marriage was one daughter, now living and over the age of 21 years. In June, 1896, the claimant, believing Minehan to be dead, married the said decedent at Portville; and from that time she and decedent continued to live and cohabit together as husband and wife down to the time of decedent's death, November 22, 1907. Such marriage was evidently entered into in good faith and with the honest belief on claimant's part that her former husband, Minehan, was dead. The issue of this second marriage was one daughter, Mercedes, who is mentioned in the will as a legatee and beneficiary under the trust thereby created. No proceedings were ever instituted during the lifetime of decedent for an annulment of the marriage of the claimant. After the decedent's death, Minehan appeared and visited his daughter and the claimant at their home in Olean.

Under such circumstances, what was the legal status of the claimant in relation to decedent's estate? If his legal widow, she was entitled to her statutory exemptions as well as her dower in his real estate; no provision having been made in the will and accepted by her in lieu of dower. While the Surrogate's Court ordinarily has no jurisdiction of the question of title to real estate, yet in this case, as the claimant is asserting her right to the household furniture and

to the $150 additional, as provided by statute (Code Civ. Proc. § 2713), and as a portion of the proceeds for which the executor and trustee now accounts arises from the rent of real estate, it becomes necessary, as an incident to judicial settlement and distribution, to determine, in this connection, the character of claimant's relations to the estate. Under the common law the marriage between claimant and decedent, her former husband being in fact alive, would have been absolutely void. However long his absence from her or however well founded her belief in the fact of his death, the second marriage would have possessed no element of legality. In England, however, the rigor of such a situation was somewhat ameliorated by act of Parliament (James I, c. 2), providing that one marrying a second time, having husband or wife living, but who had been continuously absent for seven years immediately preceding such second marriage and not known to be living, was not liable to prosecution for bigamy. A similar statute was enacted in this state in case of five years' absence. 1 Rev. Acts 1801, p. 122. Such legislation, however, did not validate the marriage or give it any legal status, but simply relieved the party from criminal liability. Williamson v. Parisien, 1 Johns. Ch. 389; Fenton v. Reed, 4 Johns. 52, 4 Am. Dec. 244.

A very radical change in this particular was effected by the adoption of the Revised Statutes of this state. It is thereby provided:

"Par. 6. If any person whose husband or wife shall have absented himself or herself for a space of five successive years, without being known to such person to be living during that time, shall marry during the lifetime of such absent husband or wife, the marriage shall be void only from the time that its nullity shall be pronounced by a court of competent authority." 2 Rev. St. (1st Ed.) pt. 2, c. 8, tit. 1.

This statute also makes provision in relation to the legitimacy and property rights of children who are the issue of a marriage contracted under such circumstances. Under this legislation the marriage existing between the claimant and decedent was neither illegal nor void. It was a legal marriage, subject, however, to the liability that the same might be declared null and void by a court of competent jurisdiction in an action brought for that purpose. When a decree of such a court had been obtained, then the marriage was void only from the date of such decree. No action was ever brought by the decedent during his lifetime for the purpose of procuring the judgment of any court declaring the marriage between him and the decedent to be void. At the time of his death a marriage contract existed between decedent and the claimant formally legally entered into in conformity with the laws of this state; such marriage under the provisions of the Revised Statutes being merely voidable and only invalid after an action had been brought for the purpose of invalidating the same.

The question involved in this case does not appear to have been decided or considered by the Court of Appeals. Price v. Price, 124 N. Y. 589, 27 N. E. 383, 12 L. R. A. 359, is not an authority in the case under consideration, because, in that case, the husband had procured a judgment annulling the marriage in question; and, in view of that fact, the Court of Appeals held that the wife was not entitled to dower in the real estate owned by him at the time of the entry of the judg--

ment and of which he was seised at the time of his death. The decisions of the inferior courts in construing this statute (3 Rev. St. [5th Ed.] p. 227) are so much at variance as to confuse rather than to aid in determining the widow's rights. For illustration, in 1862, the New York General Term (Griffin v. Banks, 24 How. Prac. 213) held that a marriage contracted under the conditions specified in the statute, if properly solemnized, had the same force and effect as if the absent husband or wife were actually dead, until it was annulled by a court of competent jurisdiction. This case was subsequently reversed by the Court of Appeals, but upon other grounds and without considering the conclusion cited. 37 N. Y. 621. In Spicer v. Spicer, 16 Abb. Prac. (N. S.) 112, the General Term of the City Court of Brooklyn held that such second marriage was valid, simply to the extent of preserving the legitimacy and right of inheritance of the children of such marriage, and no further. Both of these cases are cited in Price v. Price, not by way of approval or dissent, but for the purpose of distinguishing the facts in these cases from those in the Price Case. Valleau v. Valleau, 6 Paige Ch. 207, relates more particularly to the rights of the first husband when a second marriage had been contracted by his wife on his having absented himself for more than five years and she believing him dead. The court says that, in such a case, the remedy of the first husband is to proceed under the statute and procure a judgment annulling the second marriage; and, if the parties thereto continue to cohabit together after such judgment, then he may maintain an action against his wife for an absolute divorce upon the ground of her adultery. In Jones v. Zoller, 29 Hun, 551, the court says, after referring to the statute:

"It would seem, therefore, quite clear that such second marriages as come within the terms of the sixth section are not prohibited nor are they declared void by a court of competent authority and they are void only from the time that the nullity shall be pronounced by such court."

In this case is cited Gall v. Gall, 114 N. Y. 120, 21 N. E. 109. In the case last cited, Vann, J., in considering this statute, says:

"The section quoted seems to be based upon the probability that the absentee is dead, and is apparently designed to protect the person who, in good faith, acts upon the statute, from evil results if the absentee is actually living. The first marriage is suspended, or, as was held in Griffin v. Banks, 24 How. Prac. 213, it is 'placed in abeyance,' but it is not reinstated by the return of the absentee, because the second marriage becomes void only from the time it is so declared by a competent court. Otherwise, both marriages would be in force at the same time and, to this extent, polygamy would be sanctioned by law. The first marriage ceases to be binding until one of the three parties to the two marriages procures a decree pronouncing the second marriage void. 3 Rev. St. [6th Ed.] p. 142; Code Civ. Proc. § 1745. A statute with such possibilities should be so construed as to promote good order, and the person availing himself of its privilege should be required to act in perfect good faith. Jones v. Zoller, 32 Hun, 280; Cropsey v. McKinney, 30 Barb. 47; McCartee v. Camel, 1 Barb. Ch. 455."

It is recognized as an elementary proposition regarding the requisites of dower that:

"The marriage must be a legal one though if voidable only and not void the wife will be entitled to dower if it be not dissolved during the lifetime of the husband." 1 Washb. Real Prop. (3d Ed.) 108.

If the marriage under consideration was merely voidable, the widow is entitled to dower, because the same was not annulled during the decedent's lifetime. The real question is as to the effect of the statute upon marriages of this character. Are they valid as legal marriages until annulled? Are they binding like other voidable contracts until annulled or rescinded? Does a decree of annulment relate back of its entry and when once obtained render such marriage void from the time of its inception? As already stated, under the common law such a marriage was absolutely void; but, at an early period in both this country and England, the husband or wife contracting a second marriage under the circumstances existing in this case was relieved from liability to prosecution for bigamy. By the adoption of the Revised Statutes, other incidents of legality were given to such marriages. They were thereby declared to be void only from date of entry of judgment of annulment. The inference to be derived from the phraseology of the statute is that it was the intention of the Legislature to render marriages of this character good and valid in every particular up to the time that the same might be declared annulled by a court of competent jurisdiction. The decedent, during his lifetime, did not see fit to take proceedings to annul the marriage between himself and the claimant. Such marriage remained in full force and effect down to the time of his death, and the rights of the claimant must be determined by the conditions existing at the time of his death. Under the statute, the marriage between the claimant and the decedent was valid, subject, however, to the disability of being declared annulled, had the decedent seen fit to have taken proceedings for that purpose. Under such circumstances, the claimant is entitled to dower in the estate of the decedent and is entitled to the exemptions from his personal estate provided for by statute.

A decree will be accordingly entered, determining the right of the claimant to one-third of the accumulated and accumulating rents of the real estate of the decedent and allowing her the exemptions specified in the statute as the widow of said decedent.

Decreed accordingly.