## JAMES J. O'BRIEN
vs.
## WILLIAM J. O'BRIEN

Superior Court          Fairfield County          File #40819

Present:   Hon. JOHN A. CORNELL, Judge.

Wilson & Mara,                    Attorneys for the Plaintiff.

Charles E. Moore,                 Attorney for the Defendant.

### MEMORANDUM FILED JULY, 1935.

CORNELL, J.   The substance of plaintiff's claim, as it developed on the trial and as it has been treated in briefs filed by counsel, is this:   that defendant falsely represented to plaintiff that he was the lawfully wedded husband of plaintiff's late deceased mother and that plaintiff, in reliance upon the truth of such representations, consented to defendant's appointment as administrator on his mother's estate and thereafter became a party to an agreement of distribution with defendant of the property owned by said estate, as a result of which defendant received a portion thereof substantially corresponding to a husband's share of the estate of his deceased wife under or in view of the provisions of **General Statutes, Revision 1930, Section 5156.**

Notwithstanding the fact that the statutes regulating the contracting of marriages in New York state were so lax as to make fraud easily practicable, the finding is compelling that defendant entered into a marriage with plaintiff's mother (hereafter referred to as Harriet O'Brien) at Port Chester, New York on August 1st, 1907, which, about a year later was duly recorded.

To establish the falsity of defendant's representation that he was Harriet O'Brien's lawfully wedded husband, plaintiff essays to prove that this marriage was void ab initio and powerless to at any time confer the status of husband and wife upon the parties to it.

Whether or not, if such marriage be found to be a nullity,

such a circumstance, alone, would constitute proof of a fraudulent representation, need not be inquired, since it is potent that if the marriage validly subsisted on the day of Harriet O'Brien's death in 1925, it could not have been the subject-matter of the false representation alleged.

Since the marriage occurred in the state of New York, its validity must be determined according to the law of that jurisdiction. **Eva vs. Gough, 93 Conn. 38, 46; People vs. Kay, 252 N. Y. S. 518, 522.**

Counsel agree that the applicable statutory provisions in New York are contained in **Laws of New York, 1896, Chapter 272, Domestic Relations, Article 1, Section 3 and Section 4.**

These provide **(Section 3):**

"A marriage is absolutely void if contracted by a person whose husband or wife by a former marriage is living, unless either

1. ⸴ ⸴ ⸴ ⸴ ⸴ ⸴

2. ⸴ ⸴ ⸴ ⸴ ⸴ ⸴

3. Such former husband or wife has absented himself or herself for five successive years then last past without being known to such person to be living during that time."

**VOIDABLE MARRIAGE (Section 4):**

"A marriage is void from the time its nullity is declared by a court of competent jurisdiction, if either party thereto:

1. ⸴ ⸴ ⸴ ⸴ ⸴ ⸴

2. ⸴ ⸴ ⸴ ⸴ ⸴ ⸴

3. ⸴ ⸴ ⸴ ⸴ ⸴ ⸴

4. ⸴ ⸴ ⸴ ⸴ ⸴ ⸴

5. Has a husband or wife by a former marriage living and said former husband or wife has absented himself or herself for five successive years then last past without being known to such party to be living during that time."

Certain facts are virtually undisputed. It thus appears that plaintiff's father, one Reilly, to whom his mother, Harriet

O'Brien was lawfully wedded, died on February 13, 1899, following which on April 14, 1899, Harriet O'Brien married one George Sullivan. In the latter part of 1901 or early 1902, Harriet O'Brien, nee Sullivan, and George Sullivan were not living together and the defendant, who patronized a boarding and rooming house then operated by the former at Newark, New Jersey, first met her. Since about early 1902, at White Plains, New York and at Stamford, Connecticut, up until their marriage in 1907, although defendant denies it, he and Harriet O'Brien for the most of the time cohabited as man and wife under such circumstances that plaintiff, who lived with them, believed defendant to be his natural father.

There is no evidence that Harriet O'Brien's former husband, George Sullivan, was anything but absent during all of this period, **White vs. Lowe 1 Redf. (N. Y.) 376,** even though doubt surrounds the circumstances under which he parted company with his wife.

Aside from some evidence of a consciousness on Harriet O'Brien's part that Sullivan was alive in 1915, there is no definite proof of how long he continued to live after his marriage to plaintiff's mother, or where if he has since deceased.

On the theory on which plaintiff submits his case, it is necessary that he establish that the marriage between defendant and his mother in 1907 was absolutely void.

To do this, under the provisions of the New York statute, quoted supra, he must prove:

1.  That George Sullivan was living at the time that his mother, Harriet O'Brien, married defendant in 1907.

2.  That at some time during the five years next preceding Harriet O'Brien's marriage to defendant, she knew that George Sullivan was living, or, if she did not have actual knowledge of that fact, she failed to possess that knowledge because she neglected to make use of the channels of information at her disposal to acquire it, i.e. that she acted in bad faith.

**Gall vs. Gall, 114 N. Y. 109, 120, 121.**

Conceding, without, however, finding, that George Sullivan was living at the time Harriet O'Brien married defendant, it would do violence to the evidence, considering it in the most favorable light permissible from plaintiff's standpoint,

to hold that it establishes either actual knowledge on Harriet O'Brien's part that Sullivan was then or had been at any time within the five years prior thereto in existence or that she was guilty of bad faith by shutting her eyes to means of ascertaining whether he was or was not.

There are but two instances of mention of him in the testimony between the time when defendant first met Harriet O'Brien and the time that he married her. The first of these was three or four months after he first made her acquaintance (the latter part of 1901 or early 1902) when she said she had divorced Sullivan for "non-support". The other was about a year before defendant married her, when she said she had been to Newark and learned that Sullivan was dead.

Even if no credibility whatever were to be given such testimony it would not help plaintiff because, then, there would be utterly no evidence to show either (1) knowledge on the part of Harriet O'Brien that Sullivan was living within five years before she married defendant, or (2) lack of good faith on her part in failing to acquire such information. While, on the other hand, if such testimony be considered in the light of that of the witness Frost, the lack of evidence essential to support defendant's necessary contentions becomes even more emphatic. The latter deposed on October 24, 1933 that he had then been a resident of Newark for sixty-three years; that he had known Sullivan during a period of two or three months thirty years ago and had not seen him since.

It is true that there is evidence that in 1915 Harriet O'Brien had a consciousness that Sullivan was still living. The same is so of defendant in 1913 for he then made inquiries to ascertain whether Sullivan had been seen, precipitated, as defendant claims, by rumors that "the man" had passed away.

If Sullivan was then alive or, if in fact he was at the time defendant married plaintiff's mother in 1907, that would not make the marriage void, unless Harriet O'Brien knew such to be the fact or, not knowing it to be the fact, had acted in bad faith in failing to learn it at some time during the period of five years next prior to the marriage.

Under such circumstances, the marriage would not be void, but voidable only.

**Price vs. Price, 124 N. Y. 589, 27 N. E. 383; Taylor vs. Taylor, 173 N. Y. 266, 65 N. E. 1098; Chittenden vs. Chit-**

tenden, 68 Misc. 172; 123 N. Y. S. 629; Re: McKinley, 66 Misc. 126; 122 N. Y. S. 807; People vs. Dunbar, 194 App. Div. 144; 184 N. Y. S. 765.

There is no question, under the evidence, that the invalidity of the marriage was never judicially pronounced and none that any effort was ever made to bring its legality into question before Harriet O'Brien died. Harriet O'Brien's death ended all opportunity of ever doing so.

"No action was ever brought by the decedent during his lifetime for the purpose of procuring the judgment of any court declaring the marriage between him and the decedent to be void. At the time of his death a marriage contract existed between decedent and the claimant formally entered into in conformity with the laws of this state, such marriage under the provisions of the revised statutes being merely voidable and only invalid after an action had been brought for the purpose of invalidating same."

Re: McKinley's Estate, supra;

In re: Del Genovese's Will, 107 N. Y. S. 1033, 1034; 136 App. Div. 894, 120 N. Y. S. 1121.

There is nothing contrary to the public policy of Connecticut in this law in New York. Our own courts, without the requirements of any statutory direction, have gone quite as far in upholding the validity of marriages. Eva vs. Gough, 93 Conn. 38, 47; Roxbury vs. Bridgewater, 85 Conn. 202; Erwin vs. English, 61 Conn. 502, 510.

In view of the conclusions reached concerning this, which counsel have treated as the pivotal phase of the controversy, it will be unnecessary to examine the other issues raised by the pleadings.

Judgment for defendant.