CONSTANCE B. PRICE, Appellant, *v.* WALTER J. PRICE et al.,. Respondents.

Where a marriage has been annulled by judicial decree, upon the ground
that when it was contracted the husband had a former wife living, who·
had absented herself for more than five successive years immediately
preceding the second marriage, without being known by him to be liv-
ing, although until it was so annulled it was voidable only and not void
(2 R. S. 139, § 6), and the cohabitation of the parties was not adulterous,
and although both parties entered into the marriage in entire good faith,
yet the wife is not entitled to dower in the real estate owned by the hus-
band at the date of the decree.

*Wait* v. *Wait* (4 N. Y. 95); *Jones* v. *Zoller* (29 Hun, 551; 32 id. 280; 37 id.
. 228; 104 N. Y. 418); *Brower* v. *Bowers* (1 Abb. Ct. App. Dec. 214); *Grif-*
*fin* v. *Banks* (37 N. Y. 621), distinguished.

*Price* v. *Price* (33 Hun, 76), reversed.

(Argued March 3, 1891; decided April 21, 1891.)

CROSS-APPEALS from judgment of the General Term of the
Supreme Court in the first judicial department entered upon
an order made November 7, 1889, which modified, and affirmed
as modified, a judgment in favor of plaintiff entered upon a
decision of the court on trial at Special Term.

April 23, 1839, Walter W. Price and Susanna Butler inter-
married in England and lived together as husband and wife at
Birmingham for about one year, when he came to the United
States, where he resided until his death.

July 1, 1865, Price and Constance Bridget Tallon, the plain-·
tiff in this action, intermarried at the city of New York, and
lived together as husband and wife until July, 1871, having·
two children born unto them, who survive.

In May, 1873, Price began an action in the Supreme Court:
of this state to have his last marriage annulled on the ground
that his first wife was then living, which resulted in a judg-·
ment entered April 15, 1874, annulling the marriage. The·
court found that the first wife, Susanna, had absented herself
from her husband since 1843 — had not been heard of by him
for more than five years, and that the marriage between Walter

W. Price and Constance B. Tallon was contracted in good faith, believing that the former wife was dead. It was adjudged that their marriage was null and void, but " only from the time that its nullity is hereby pronounced, to wit, from and after the date of this judgment." It was further adjudged that the children of the marriage were legitimate, and entitled to succeed in the same manner as legitimate children to the real and personal estate of the father and mother, or either of them. At the date of the entry of this judgment, Walter W. Price owned the real estate described in the interlocutory judgment in this action, about fourteen acres of which he conveyed, in July, 1875, to Walter J. Price. June 6, 1876, Walter W. Price died seized of all of said real estate except that so conveyed, which he disposed of by will. This action was begun by the plaintiff June 7, 1880, to have dower admeasured in the real estate of which Walter W. Price was seized at the date of the entry of the judgment annulling the marriage. The defendants are the devisees, grantees and mortgagees of the devisees of Walter W. Price. They set up in their answers, among other defenses: (1) That the marriage was null and void and had been so adjudged. (2) That, February 25, 1874, the plaintiff received from Walter W. Price a sum of money in satisfaction of all claims to dower in his property.

*Chas. Jones* and *George H. Starr* for plaintiff. The plaintiff was entitled to recover on the facts proved by her when she rested her case. (3 Kent's Comm. 368.) During the lawful connection between the parties, the husband, Walter W. Price, was seized of the lands in which the plaintiff claims dower, and the right attached before the entry of the judgment declaring the marriage void. (4 Kent's Comm. 50.) The marriage between the plaintiff and Walter W. Price was, on the facts found by the referee, a valid marriage. (2 R. S. 139, §§ 5, 6, 8, 9 ; *Valleau* v. *Valleau,* 6 Paige, 207 ; *White* v. *Lowe,* 1 Redf. 376 ; *Cropsey* v. *McKinney,* 30 Barb. 47 ; *Griffin* v. *Banks,* 24 How. Pr. 213 ; *Roderigas* v. *E. R. S. Inst.,* 63 N. Y. 460 ; *Brower* v. *Roberts,* 1 Abb. Ct. App. Dec.

214; *Jones* v. *Zoller*, 29 Hun, 551; 32 id. 280; *Price* v. *Price*, 33 id. 76; *Jones* v. *Fleming*, 37 id. 227.) The marriage of the plaintiff with Walter W. Price being valid, and she being his lawful wife, had dowable capacity, and her dower right or title was an interest which attached on the land of which her husband was seized during the coverture. (*Wait* v. *Wait*, 4 N. Y. 95; *Steele* v. *Ward*, 30 Hun, 557.) The plaintiff has never been barred or divested of the dower right or interest which attached to the lands by virtue of marriage and seisin. (*Wait* v. *Wait*, 4 N. Y. 95; *People* v. *Faber*, 92 id. 149; *Scheffer* v. *Pruders*, 64 id. 47.) The plaintiff was the lawful wife of Walter W. Price, and as such had dowable capacity. Her right to dower has not been cut off or barred. (2 R. S. 139, § 6; *Brower* v. *Brower*, 1 Abb. Ct. App. Dec. 225.) As the defendant Paine, who owns the manor property, is not a residuary devisee, the rule which permits the whole dower to be allotted out of one parcel, when that parcel is part of the residuary estate, does not apply. (*Funyan* v. *Runyan*, 21 Hun, 12; *Burnhart* v. *Lymburner*, 85 N. Y. 172.) The court below erred in refusing to reconsider the question and direct dower to be allotted or charged as an annuity upon the several properties. (*Raynor* v. *Raynor*, 94 N. Y. 248; *Weeks* v. *Cornell*, 98 id. 657.) By the express terms of the statute the defendant is liable for all damages resulting to the plaintiff from the time of demand till the time of recovery of judgment. (Code Civ. Pro. § 1600; 2 R. S. [6th ed.] 1122, § 20; *Kyle* v. *Kyle*, 67 N. Y. 405.) The statute making the defendant who refuses the demand the only person liable for the damages, is evidently based upon well-settled principles of equity. (*Youngs* v. *Carter*, 10 Hun, 198, 199; *B. N. Bank* v. *Duncan*, 12 id. 410; 38 id. 564.) The Code of Civil Procedure prescribes a special rule as to damages in dower cases. It is distinct from the rule in ejectment cases. (*Jackson* v. *Wood*, 24 Wend. 443; *Kyle* v. *Kyle*, 67 N. Y. 406, 407; *Lawrence* v. *Miller*, 2 id. 245; *Aikman* v. *Harsell*, 98 id. 191; *Morgan* v. *Varick*, 8 Wend. 587; *Jackson* v. *Wood*, 24 id. 443; *Leland* v. *Tousey*, 6 Hill,

328; *Holmes* v. *Davis,* 19 N. Y. 441, 443; *Budd* v. *Walker,* 9 Barb. 493; *Grant* v. *Cooper,* 9 Hun, 329.) The general ground of defendants' appeal as to damages is erroneous. (2 R. S. [6th ed.] 1122, 1123, § 20; *Aikman* v. *Harsell,* 31 Hun, 634; *Schroder* v. *Mayor, etc.,* 36 id. 423; *Lautz* v. *Buckingham,* 4 Lans. 484; *Thompson* v. *Hickey,* 8 Abb. [N. C.] 159; 59 How. Pr. 434; *In re B. P. Church,* 3 Edw. Ch. 155, 169, 170; 4 Bradf. 503, 515.) In so far as any question can be raised in respect to the order of the General Term denying defendants' motion for a reargument or for a modification of the order of reversal, it is sufficient to say that the application was addressed to the discretion of the court, and the order is not reviewable in this court. (*Marshall* v. *Davies,* 78 N. Y. 414; *Agate* v. *Morrison,* 84 id. 673.) The only issues which the court below could consider in determining the appeal, or which can be considered here, are the issues which appear by the record to have been tried. All other issues, whether presented by the pleadings or not, are deemed to have been abandoned or waived. When a party has elected to try, or has acquiesced in the trial of the action upon a particular theory, he is concluded, and the appellate court will only consider questions raised on the issues as tried. (*Lockwood* v. *Quackenbush,* 83 N. Y. 607.) The facts which the defendants say they wish to prove on another trial are immaterial, and if admitted would not be a bar to the plaintiff's right of dower. (*Carson* v. *Murray,* 3 Paige, 483.)

*David Wilcox* for defendants Paine and others. Plaintiff's contention that notwithstanding judgment of nullity, the marriage is valid up to the date of such judgment, is in derogation of the general common-law and statutory rules, and rests wholly upon the claim that this is the effect of an exception expressed in the statute, that by virtue thereof a judgment of nullity does not annul but merely terminates the marriage. (*Williamson* v. *Parisien,* 1 Johns. Ch. 389; *Finn* v. *Finn,* 62 How. Pr. 83; *Elliott* v. *Gurr,* 2 Phil. 16; *Blossom* v. *Barrett,* 37 N. Y. 434; *Appleton* v. *Warner,* 51 Barb. 270.) The excep-

tion upon which the plaintiff relies was introduced merely for the purpose of rendering the marriages to which it applies voidable; it is common to all marriages of that character, and if plaintiff's claim be well founded it must be held that all such marriages are not annulled, but merely terminated by judgment of nullity. (*Jaques* v. *Pub. Admr.*, 1 Bradf. 499; *Finn* v. *Finn*, 62 How. Pr. 86; *Henry* v. *Henry*, 4 Den. 253; *Valleau* v. *Valleau*, 6 Paige, 207; *Cropsey* v. *McKinney*, 30 Barb. 47, 55; *White* v. *Lowe*, 1 Redf. 376.) It is impossible that a contract attempted by persons who were incapable of contracting, and for that reason adjudged null, can nevertheless be a valid contract. (*Valleau* v. *Valleau*, 6 Paige, 207; *White* v. *Lowe*, 1 Redf. 376.) Other provisions of the statute show that, after it has been adjudged null, the attempted marriage has no validity whatever. (Laws of 1855, chap. 547, § 1; Laws of 1882, chap. 401.) Without qualification of any sort, the statute expressly provides that the judgment of nullity shall be evidence of the invalidity of the marriage, and this court has several times stated that such is its effect. (*Keen's Case*, 7 Cook, 140; *Aughtie* v. *Aughtie*, 1 Phil. 201; *Elliott* v. *Gurr*, 2 id. 16; *Perry* v. *Perry*, 2 Paige, 507; *Wait* v. *Wait*, 4 N. Y. 100; *In re Ensign*, 103 id. 287; *Van Cleaf* v. *Burns*, 118 id. 549.) The claim that dower arises from a marriage which is void, whether by reason of the statute alone or by reason of a judgment pronounced in accordance with statutory provisions, is contrary to the authorities. (*Cropsey* v. *Ogden*, 11 N. Y. 228; Bishop on Mar. & Div. § 706; Park on Dower, 19; 2 Bishop on Mar. & Div. § 690; 1 Scribner on Dower, 146; *Spicer* v. *Spicer*, 16 Abb. Pr. [N. S.] 112.) The case upon which the General Term rested its decision does not support the same. That case and the decisions since, so far as applicable here, support the rules already stated. (*In re Ensign*, 103 N. Y. 284; *Day* v. *West*, 2 Edwards, 596; *Reynolds* v. *Reynolds*, 24 Wend. 193; *Cherraud* v. *Cherraud*, 1 Leg. Obs. 134; *Moore* v. *Hageman*, 92 N. Y. 521; *Witthaus* v. *Smith*, 105 id. 332.) The judgment of the General Term was erroneous in that it did not order a new trial. (*Jones* v.

*Fleming,* 104 N. Y. 418; *Griffin* v. *Marquardt,* 17 id. 28; *Foot* v. *A. Co.,* 61 id. 571; *Ehrichs* v. *De Mill,* 75 id. 370; *Guernsey* v. *Moore,* 80 id. 181; *Gawthrop* v. *Leary,* 89 id. 622; *Goodwin* v. *Conklin,* 85 id. 21.) It was error to charge the defendant Little with damages. (1 R. S. 742, §§ 19, 20, 22, 23; *Kyle* v. *Kyle,* 67 N. Y. 400, 405; Code Civ. Pro. § 1603, *Hazen* v. *Thurber,* 4 Johns. Ch. 604; *Witthaus* v. *Schack,* 38 Hun, 560; *Raynor* v. *Raynor,* 21 id. 36.) There is no merit in the appeal regarding the manner in which dower has been assigned. (Code Civ. Pro. § 1609; *White* v. *Story,* 2 Hill, 543; *Coates* v. *Cheever,* 1 Cow. 460; *Wood* v. *Keyes,* 6 Paige, 478; *Raynor* v. *Raynor,* 21 Hun, 42.) There can be no dower in the burial lots in Greenwood cemetery. (Laws of 1838, chap. 298; Laws of 1839, chap. 156; Laws of 1850, chap. 152; *Thompson* v. *Hickey,* 59 How. Pr. 434; *Schroeder* v. *Winzoe,* 36 Hun, 424; *Lautz* v. *Buckingham,* 4 Lans. 484.)

*James R. Marvin* for defendant Little. Plaintiff's marriage was invalid. (2 R. S. [5th ed.] 227, 233, 235, §§ 4, 33 36, 50; Code Civ. Pro. § 174.) A divorce at common law avoided the marriage *ab initio.* It was equivalent to a sentence of nullity under our statute. It placed the parties in the same relation to each other as though there had been no marriage. (*Wait* v. *Wait,* 4 N. Y. 100; 2 Kent's Comm. 78, 80; 1 Johns. Ch. 389; 4 Johns. 52.) The marriage in question was never valid for any purpose. The most that can be claimed for it is, that if it had not been annulled during the life-time of Price, at the instance of one of the parties, or afterwards at the instance of the former wife, the plaintiff might have been entitled to dower and the issue of the marriage might have been "entitled to succeed in the same manner as legitimate children to the real and personal estate of the parent who, at the time of the marriage, was competent to contract." (2 R. S. [5th ed.] 234, § 37; *Wait* v. *Wait,* 4 N. Y. 95.) The marriage in question was void at common law, voidable only by statute from the sentence of nullity, and from that time must be considered as an absolutely void marriage. By the decree

annulling the marriage, the marriage became absolutely void *ab initio*, and the inchoate right of dower, if it ever attached, was absolutely destroyed. (*Spicer* v. *Spicer*, 16 Abb. Pr. [N. S.] 112.) The court at Special Term properly overruled the referee in his findings of damages for mesne profits as against Mrs. Little from the time of the conveyance of her house to Wedekind. (*Graham* v. *Linden*, 50 N. Y. 551.) Mrs. Little in no event can be charged with the mesne profits after she conveyed the premises No. 4 Vannest place to Wedekind, April 25, 1882. After that time she ceased to have any interest in that property. (36 N. Y. 646; 60 Barb. 478; 19 N. Y. 488; 3 Black. Comm. 205.) The occupant of the premises subject to a right of dower is held for mesne profits on the theory that he has enjoyed the use of the property, either by occupation or through the receipt of rents. If he has received no rents or if occupation has not been beneficial to him no damages can be recovered. If Mrs. Little, while she owned the property, had not occupied the premises and had not been able to rent them, no damages could have been recovered against her. (*Witthans* v. *Schack*, 38 Hun, 560.) The Code of Civil Procedure makes provision for the recovery of mesne profits. (Code Civ. Pro. §§ 1600, 1601, 1602; *Kyle* v. *Kyle*, 67 N. Y. 406.) The purchase of Vannest place property by Mrs. Little was not an unlawful act, whether she had knowledge of plaintiff's dower claim or not. She is chargeable only for what has come to her hands. (*Van Name* v. *Van Name*, 23 How. Pr. 252; Code Civ. Pro. § 1600.) At common law a widow was entitled to damages for withholding her dower from the time only when she recovered her judgment for dower. (*Kyle* v. *Kyle*, 67 N. Y. 406, 407.) It was by statute that she first became entitled to arrears. The statute prescribed the sole rule for the amount thereof, both in law and equity. (Code Civ. Pro. §§ 1600, 1613; 1 R. S. 742, §§ 19, 20.) If Mrs. Little had continued the owner of the premises up to the application for judgment for damages, no recovery could be had against her except for six years immediately prior to such application. (*Kyle* v. *Kyle*, 67 N. Y. 405.)

FOLLETT, Ch. J.    The primary question underlying this case is whether, when a wife absents herself from her husband for five successive years without being known by him to be living within that time, and he contracts a second marriage which is annulled in an action between them because the first wife is living, such second wife is entitled to dower in the real estate owned by him at the date of the entry of the judgment of nullification?

In this state the right to dower arises out of the rules of the common law, except in so far as they have been changed by our statutes.

By the common and canon law a marriage by one having a spouse living and undivorced, though the spouse had been absent and believed to be dead, was void *ab initio*, and the person contracting a second marriage was guilty of a felony. (1 Scrib. Dow. 115, pp. 5; 1 Black. Com. 436; 2 Steph. Com. [11th ed.] 256; 2 Kent's Com. 79; 1 Bish. M. & D. § 299.)

An examination of the legislation on the subject of marriages between persons, one of whom has a spouse living, becomes necessary to enable us to determine whether the rule of the common law has been changed.

By chapter 2 of the first year of James the First, it was enacted that a person marrying a second time, whose husband or wife had been continually absent for seven years immediately preceding the second marriage and not known by such person to be living within that time, should not be guilty of bigamy.    The rule prescribed by this statute has remained the law of England to this day.    (4 Steph. Com. [11th ed.] 90.) A statute containing the same provisions, though reducing the period of absence to five years, was enacted in this state February 7, 1788 (2 J. & S. 214), which with slight modifications has been continued in force to the present time.    (1 Rev. Acts of 1801, 122; 1 Rev. Laws of 1813, 112; 2 R. S. 687; Penal Code, §§ 298, 299.)

It was held in this state that the statute concerning bigamy did not render such a second marriage valid (*Fenton* v. *Reed,*

4 Johns. 52; *Williamson* v. *Parisien*, 1 Johns. Ch. 389), and such is the rule in England. (Shelf. M. & D. 89, 223, 230, 479.)

Such was the condition of the law when the Revised Statutes of this state were enacted, and experience having proved that the statute in respect to bigamy had induced the contraction of second marriages by persons having spouses who had been absent for five years and believed to be dead, which after the return of the absent husband or wife, were found to be void and the issue illegitimate, it was, for the purpose of alleviating some of these consequences enacted. (2 R. S. 139.)

" § 5. No second, or other subsequent, marriage, shall be contracted by any person during the life-time of any former husband or wife of such person, unless," *  *  *  and "Every marriage contract in violation of the provisions of this section, shall, except in the case provided for in the next section, be absolutely void."

" § 6. If any person whose husband or wife shall have absented himself or herself, for a space of five successive years, without being known to such person to be living during that time, shall marry during the life-time of such absent husband or wife, the marriage shall be void only from the time that its nullity shall be pronounced by a court of competent authority."

It was also provided (1 R. S. 142):

" § 20. The chancellor (Supreme Court) may by a sentence of nullity, declare void the marriage contract for either of the following causes, existing at the time of the marriage . *  *  *.

" 2. That the former husband or wife of one of the parties was living; and that the marriage with such former husband and wife was then in force  *  *  *.

" § 23. When it shall appear and be so decreed, that such second marriage was contracted in good faith, and with the full belief of the parties, that the former husband or wife was dead, the issue of such marriage born or begotten before its nullity be declared, shall be entitled to succeed, in the same

manner as legitimate children, to the real and personal estate of the parent who, at the time of the marriage was competent to contract; and the issue so entitled shall be specified in the sentence of nullity."

By these provisions such marriages ceased to be void, and became voidable and subject to be annulled, with the consequences incident to the annullment of marriages by the rules of the common law, except in so far as they were changed by the above sections and the two hereinafter quoted.

By the common law, neither dower nor courtesy arises from a voidable marriage, if it be annulled during the life-time of the parties, and when annulled by the judgment of a competent court, they are .in the same situation in respect to each other, and to rights in the property of each other, as though a marriage had never been entered into, and the children born of it are illegitimate unless legitimated by statute. (*Aughtie* v. *Aughtie*, 1 Phill. 201; *Cage* v. *Acton*, 1 Ld. Raym. 521; Bish. on M. & D. §§ 116–118, 690, 712; Bish. on H. & W. §§ 247, 479, 482; 1 Bright H. & W. 7, 322; 2 id. 366; 1 Roper H. & W. 332; Stewart M. & D. §§ 147, 429, 437.)

And in the absence of a statute saving the right to dower, the dissolution *a vinculo* of a valid marriage, for the fault of either party, bars it. (*Barrett* v. *Failing*, 111 U. S. 523; *Frampton* v. *Stephens*, L. R. [21 Ch. Div.] 164; 14 Am. & Eng. Encly. Law, 537; 5 id. 921.)

It is contended by the learned counsel for the plaintiff that the rule of the common law was altered by the sections of the Revised Statutes hereinbefore set forth, and by the two next quoted, which are the only ones relied on as affecting a change.

"§ 8. In case of divorce, dissolving the marriage contract for the misconduct of the wife, she shall not be endowed." (1 R. S. 74, § 8.)

"§ 48. A wife being a defendant in a suit for a divorce brought by her husband, and convicted of adultery, shall not be entitled to dower in her husband's real estate, or any part thereof, nor to any distributive share in his personal estate." (2 R. S. 146, § 48.)

The last section was repealed by chapter 245, L. 1880, after it had been made a part of section 1760 of the Code of Civil Procedure.

In *Wait* v. *Wait* (4 N. Y. 95), it was held that a judgment dissolving a valid marriage for the adultery of the husband did not cut off the wife's inchoate right to dower in lands of which he was at the date of the judgment, or theretofore had been seized; and she having survived, dower was assigned. The court rested its decision on the ground that the sections denying a wife's right to dower when divorced for her adultery, by fair implication saved it when a divorce was granted for the adultery of the husband. The learned judge, who wrote in the case last cited, seems to have overlooked *Charruand* v. *Charruand* (1 N. Y. Leg. Obs. 134); *Day* v. *West* (2 Edw. Ch. 592), and *Reynolds* v. *Reynolds* (24 Wend. 193); and the judgment has not escaped criticism (*Moore* v. *Hegeman*, 27 Hun, 68; affd. 92 N. Y. 521; 2 Bish. M. & D. § 706); but the result reached by it has been lately confirmed by statute. (Code Civ. Pro. § 1754.)

The changes effected by the Revised Statutes in the rights of parties entering in good faith into a marriage while one has a living and undivorced spouse who has been absent for five years and not known to be living, are: (1) The marriage is not void from the beginning, but voidable. (2) When judicially annulled, it is only void from the date of the judgment. (3) When so annulled, the issue may be adjudged entitled to succeed to the estate of the parent who was competent to marry, in the same manner as legitimate children. (4) It has been held that while such a marriage remains unannulled, the cohabitation of the parties is not adulterous (*Valleau* v. *Valleau*, 6 Paige, 207); also that the survivor is entitled to administration (*White* v. *Lowe*, 1 Red. 376); and before the passage of the acts for the protection of married women, that the husband could hold and transfer the personal property of the wife. (*Cropsey* v. *McKinney*, 30 Barb. 47.)

We do not express the opinion that other changes than these mentioned have not been wrought, for we are only concerned

with the claim that it has changed the common law in respect to the right of a wife to dower under such a marriage after it has been judicially annulled.

The absence of a husband or wife for five years, unheard of during that time, and who is believed to be dead, is not in this state a cause for an absolute divorce.

The effect of a judgment annulling a marriage upon the right of a wife to dower, has never been determined in this state in any reported case except in the one at bar. In *Spies* v. *Spies* (16 Abb. [N. S.] 112), the second marriage, through which the wife claimed dower, was never dissolved, and she survived her husband, nevertheless, dower was denied her. In *Jones* v. *Zoller* (29 Hun, 551 ; 32 id. 280 ; *S. C., sub. nom. Jones* v. *Fleming*, 37 id. 228 ; revd. 104 N. Y. 418), the second marriage had not been dissolved, and the wife survived her husband. In *Brower* v. *Bowers* (1 Abb. Ct. App. Dec. 214), and *Griffin* v. *Banks* (24 How. Pr. 213 ; rev. 37 N. Y. 621), the voidable marriages considered remained in force until the death of one of the spouses, and were never judicially annulled.

In the case at bar, the learned General Term rested its judgment on the authority of *Wait* v. *Wait* (*supra*), which was decided upon the ground that the sections above quoted preserved the wife's inchoate right of dower in case she was innocent and he guilty, but in the case at bar, it was found and adjudged in the action wherein the marriage was annulled, that both parties contracted their marriage in good faith, believing that the husband's former wife was dead, which judgment is declared by the statute to be conclusive between them. (2 R. S. 144, § 37.)

The referee upon the trial of the issue in this action found, and the General Term affirmed the finding, that both parties contracted their marriage in good faith. But we do not think those sections (8 and 48) relate to the rights of persons whose marriages are annulled, but only to those of persons divorced for adultery. There now is, and always has been, a broad distinction made by the common law, and in the statutes of this state, between actions brought to annul marriages, by reason

of the incapacity of the parties to legally contract them, and actions brought for their dissolution by reason of acts committed after their due and legal solemnization. The former class was provided for by article second of chapter eight of part second of the Revised Statutes and the latter by the third and fourth articles of the same chapter. The same distinction is still preserved by the Code of Civil Procedure. (Title 1, chap. 15, Code C. P.)

Section forty-eight above quoted is contained in the third article which relates to divorces *a vinculo* on the ground of adultery, and has no application to actions or judgments annulling marriages for causes existing prior to their solemnization.

The word "misconduct" in the eighth section (1 R. S. 74) has been held by this court to mean adultery (*Van Cleaf* v. *Burns*, 118 N. Y. 549), and the section is not applicable to this class of actions.

The plaintiff is not entitled at common law, nor under the statutes of this state, to dower in any of the lands described in her complaint.

The conclusion reached renders it unnecessary to consider the other questions raised by the defendants' appeals, or those presented by the appeal taken by the plaintiff.

The judgments and orders reviewed, subsequent to the judgment entered on the report of H. H. Anderson, referee, reversed, and the judgment entered on the report of H. H. Anderson, referee, on the 9th day of August, 1883, dismissing the complaint with costs is affirmed with costs to each of the defendants appearing by separate attorneys.

All concur.

Judgment accordingly.