In the Matter of the Judicial Settlement of the Accounts of Proceedings of ALICE L. GILBERT, Deceased, as Executrix, and of CHARLES A. RUNK, as Administrator with the Will Annexed of the Estate of JANE MONCRIEF, Deceased.

CHARLES A. RUNK, as Executor of ALICE L. GILBERT, Deceased, et al., Appellants; VALLIMER GILBERT, Respondent.

**Husband and wife — when decree annulling marriage on ground of duress is granted marriage is void ab initio — statute legitimizing children whose parents have intermarried — child born to parties thereafter married but whose marriage is annulled for duress does not come within statute.**

1. Marriage in this state is a civil contract depending upon the consent of the parties who enter into the relation. A marriage obtained by force or fraud is void, "from the time its nullity shall be declared, by a court of competent authority." (2 R. S. ch. 8, tit. 1, §§ 1, 4.) When such a decree is pronounced the marriage is void *ab initio*, the parties are in the same position as though a marriage had never been entered into and the children born of the marriage are illegitimate by statute. (*Price* v. *Price*, 124 N. Y. 589; *Jones* v. *Brinsmade*, 183 N. Y. 258, followed.)

2. Chapter 531 of the Laws of 1895, providing that "all illegitimate children whose parents have heretofore intermarried * * * shall be considered legitimate for all purposes," refers to a marriage, not to some supposed contract, not in fact made, and where a marriage has been annulled by the courts for duress and force a child born to the parties before the marriage does not come within the act. (*Price* v. *Price*, 124 N. Y. 589; *Collins* v. *Collins*, 71 N. Y. 269, followed; *Barker* v. *Barker*, 172 App. Div. 244, overruled.)

*Matter of Moncrief*, 203 App. Div. 893, reversed.

(Argued February 27, 1923; decided April 17, 1923.)

APPEAL, by permission, from an order of the Appellate Division of the Supreme Court in the first judicial department, entered November 17, 1922, which unanimously affirmed a decree of the New York County Surrogate's

Court directing distribution of the estate of Jane Moncrief, deceased.

*Godfrey Goldmark* and *Rufus T. Griggs* for Charles A. Runk, as executor, appellant. The fundamental errors in the conclusions of the learned surrogate were his failure to distinguish between a decree of divorce and a decree of annulment; his failure to distinguish between a mere voidable marriage and a voidable marriage which had been adjudged to be null; and his failure to give weight to the status in 1895 of children born during marriages subsequently annulled in ascertaining the scope of the statute of 1895. (*Baylis* v. *Baylis,* 207 N. Y. 446.) At common law a marriage induced by duress was absolutely void. (*Perry* v. *Perry,* 2 Paige Ch. 501.) At common law a voidable marriage when adjudged null became so *ab initio,* and the children born during such marriage were illegitimate and the wife was entitled to no dower. (*Price* v. *Price,* 124 N. Y. 589; *Jones* v. *Brinsmade,* 183 N. Y. 258.) By the Revised Statutes of 1830 the rules of the common law were relaxed to the extent of providing that certain marriages (including one induced through duress) should be voidable only and not void, and to the extent of providing that certain property rights should accrue to children born during certain voidable marriages which had been annulled, as if they were legitimate; but the provision that the marriage should be null from the time its nullity should be declared did not change the common-law rule that the marriage was void *ab initio* and had no valid inception. (*State* v. *Yoder,* 113 Minn. 503; *Price* v. *Price,* 124 N. Y. 589; *Jones* v. *Brinsmade,* 183 N. Y. 258; *Town of Reading* v. *Town of Ludlow,* 43 Vt. 628.)

*Percy L. Housel* for Anna Ostrander, appellant. The statute of 1895 did not legitimatize Agnes A. Ga Nun. (*Price* v. *Price,* 124 N. Y. 589; *Brower* v. *Brower,* 1

Abb. Ct. App. Dec. 214; *Collins* v. *Hoxie,* 9 Paige, 81; *Cent. Trust Co.* v. *Skillen,* 154 App. Div. 227.)

*Harry W. Mack* and *John H. Taylor* for respondent. Under the provisions of the Revised Statutes the annulment of a marriage did not render it void *ab initio,* but only from the time the judgment was entered. (*Aymar* v. *Roff,* 3 Johns. Ch. 49; 3 Black. Comm. 93; *Burtis* v. *Burtis* 1 Hopk. 557; *Perry* v. *Perry,* 2 Paige, 501; *Harford* v. *Morris,* 2 Hagg. 423; *Harris* v. *Hicks,* 2 Salk. 548; *Erkenbrach* v. *Erkenbrach,* 96 N. Y. 456; *Brower* v. *Bowers,* 1 Abb. Ct. App. Dec. 214; *Barker* v. *Barker,* 172 App. Div. 244; *Wolf* v. *Wolf,* 111 Misc. Rep. 391.) The issue of marriages annulled on the ground of duress were legitimate, and no inconsistency would result from the application of the legitimating statutes to children born before their parents contracted a voidable marriage. (*Burtis* v. *Burtis,* 1 Hopk. 557; *Wightman* v. *Wightman,* 4 Johns. Ch. 343; *Ferlot* v. *Gojon,* 1 Hopk. 478; *Johnston* v. *Parker,* 3 Phill. 39; *McCullen* v. *McCullen,* 162 App. Div. 599.)

ANDREWS, J. If Agnes A. Ga Nun was legitimate, as she has been held to be by the courts below, her child is entitled to a distributive share in the estate of one Jane Moncrief. Agnes A. Ga Nun was born on February 5, 1882. On the next day her parents were married. On June 23, 1883, this marriage was annulled for duress and force on the complaint of the husband. The decree provided that the marriage " is wholly null and void from the date of this judgment." Chapter 531 of the Laws of 1895 provides that " all illegitimate children whose parents have heretofore intermarried   *   *   *   shall be considered legitimate for all purposes. Did the parents here intermarry within the meaning of this clause? We hold that they did not.

Marriage in this state is a civil contract depending

upon the consent of the parties who enter into the relation. (R. S. 1830, pt. 2, ch. 8, tit. 1; *Caujolle* v. *Ferrie*, 23 N. Y. 90, 106.) Any alleged contract may be void or voidable. A void contract is no contract whatever. At no time and under no circumstances has it any effect. It does not change the legal status of the parties. It is a nullity. It may be attacked directly or collaterally. A marriage contract may be void in this sense. A bigamous marriage is an illustration. Its invalidity may be asserted by any one if the question becomes material, and the parties to it may act as if it had never been. A voidable contract on the other hand is valid unless it be attacked by the party seeking to avoid it. Until disaffirmed it is binding. Any defect in it may be cured by the ratification of the innocent party. If induced by fraud or duress it may still be enforced at the election of him who was deceived or compelled. There is this distinction, however, between a voidable contract of marriage and a voidable contract of another character. The latter may be ended by a mere act of disaffirmance. Because of the peculiar incidents of the marriage relation; the interests of the public and the interests of children, simple disaffirmance of a marriage by the injured party is not enough. It must be followed by a decree of the court ratifying the act. (*Ostro* v. *Ostro*, 169 App. Div. 790.) Much the same distinction exists in case of the material breach of a contract. Ordinarily the injured party may rescind without more. Not so as to marriage. A decree of divorce is required.

Whether prior to the Revised Statutes a marriage induced by duress and force was void or only voidable our courts of equity had jurisdiction to declare it void. (*Perry* v. *Perry*, 2 Paige Ch. 501; *Wightman* v. *Wightman*, 4 Johns. Ch. 343; *Ferlat* v. *Gojon*, 1 Hopk. Ch. 541; *Walter* v. *Walter*, 217 N. Y. 439.) Such a decree rendered the marriage void from the beginning. (*Perry* v. *Perry*,

*supra.*) In 1830, however, regulations were adopted affecting marriage and divorce. (R. S. pt. 2, ch. 8.) These regulations begin with the statement that marriage should continue to be a civil contract to which the consent of parties capable in law of contracting shall be essential. Certain marriages are then declared to be absolutely void. Other marriages, among them those obtained by force or fraud, are void " from the time their nullity shall be declared by a court of competent authority." No subsequent marriage may be contracted until such decree is obtained.

These provisions resolved any doubt as to whether a marriage induced by fraud was void or voidable. But was it the intention also to alter the rule that when the decree was pronounced the marriage was void *ab initio?* We fail to find evidence of such intent. The marriage shall be void from the time its nullity shall be declared by a court. Consent is essential to the contract. No consent, no marriage. The court finds no consent. It, therefore, nullifies the marriage. It declares there was no marriage. From that moment the marriage is void. As we have seen a void marriage is void for all purposes from its inception. All that was meant was that no longer might husband and wife upon their own responsibility determine that they were free from the contract. Such a determination required the concurrence of the court. Only when that was obtained did the marriage become void. But when it was obtained the marriage was nullified and all the consequences of a void marriage then followed.

Otherwise we have a ceremony performed as the court finds without the consent the statute states to be essential, perfectly valid until set aside by decree, a nullity only from the time the decree is entered. Various results follow such a conclusion. The wife would have an inchoate right of dower in any real property of which the husband was seized before the decree. Rights of

curtesy might exist. The children would be legitimate. Other provisions of the statute show, however, that there was no such intention. " The chancellor may, by a sentence of nullity declare void a marriage contract " if consent was obtained by force or fraud. (Art. 2, sec. 20.) What he does is to nullify such a contract because it is void. A marriage of an idiot or lunatic may be annulled after his death on the application of an interested relative. (Secs. 24, 25.) If valid until such a decree there could be no relative materially interested. In full force at the idiot's death, his property would descend and be distributed under conditions then existing. Children of such a marriage would be legitimate, but the legislature says they shall inherit only from the parent of sound mind. (Sec. 28.) So a marriage induced by fraud or force may be annulled after the death of the injured party. Again what relative could be interested? (Sec. 30.) Courts may require the children of such a marriage to be supported by the guilty party. (Sec. 32.) Why this provision if they were legitimate? A sentence of nullity is conclusive evidence of the invalidity of the marriage in all courts and proceedings (Sec. 37), not of its invalidity from the time the decree is pronounced. The revisers' note to these sections indicate what was in their mind. " Some of these marriages are absolutely void by existing law. But it is believed that the interests of society and of the parties concerned will be best promoted by placing them on the ground stated in this section." Subsequent legislation enforces the same construction. By chapter 225 of the Laws of 1902 children of a marriage annulled because the parents were under the age of consent were made legitimate. The Code of 1919 made provision with regard to children of a marriage annulled because of idiocy or lunacy and said the child was legitimate as to the sane parent and might be declared by the court legitimate as to both parents. If the same result was reached because of force or fraud the child

was deemed legitimate unless the court declared otherwise. (Sec. 1750.) All this would have been unnecessary were the children legitimate in any event unless contrary to the general current of thought the legislature intended to limit provisions in regard to legitimacy that had previously existed.

But this discussion is largely unnecessary in view of two decisions of this court which seem to settle the question. In *Price* v. *Price* (124 N. Y. 589) a marriage was annulled because a former wife was living although absent for five years. Here, also, the marriage was by statute declared void " only from the time that its nullity shall be pronounced by a court." Based upon these words, the same argument was made as was made here. As here also the lower courts so held. But we held otherwise. We said that at common law where a marriage was annulled the parties were in the same position as though a marriage had never been entered into and the children born of it were all illegitimate unless legitimated by statute. This rule remains unimpaired. A similar question arose in *Jones* v. *Brinsmade* (183 N. Y. 258). Judge CULLEN speaking for the court, refers to an action to annul a marriage on the ground of defendant's insanity as one brought to end it " on account of its original invalidity " and as a bill for a cause " which goes to the legality of the marriage originally," and he quotes Judge RAPALLO in *Collins* v. *Collins* (71 N. Y. 269) as referring to such a case as one where the wife ." denies the existence of the marriage." He continues that " conceding that the marriage of a lunatic is voidable, not void, and that it becomes void only upon a decree annulling the marriage, does it follow that while electing to have her marriage declared void a plaintiff can insist that she is entitled to all the rights of a wife under a valid marriage until the time the decree is rendered? I think the learned court in the *Gore* case failed to appreciate that the status of the parties established by the decree of nullity neces-

sarily relates back to the time of the contract of marriage. * * * It is said by Mr. Bishop * * * when a voidable marriage has been set aside by a decree of nullity, the parties are regarded as having never been married."

Even without these controlling authorities the sub-heading of the section referred to, " At what time marriages without consent, etc., may be deemed void," mistakenly criticized though it may have been by Mr. Bishop, and the statements in various cases that such a marriage is " void only from the time the decree is pronounced," do not lead to another conclusion. The very purpose of the revisers was to require a decree before the marriage was treated as void. It was not to be void but only voidable before the decree was obtained. That is all that such statements mean. But when the marriage was once held void it is as if it had never been. *Barker* v. *Barker* (172 App. Div. 244) does conflict with these views. So do some other cases in the lower courts. They equally conflict with *Price* v. *Price.* The argument of the respondent, based upon the supposed meaning of section 32 of the Revised Statutes, does not convince us. That section was intended to avoid the need of further proceedings to compel the support of children. It is true that however the statute is interpreted some inconsistencies will result. We think fewer, however, on the theory that we adopt.

We have then a decree of nullity holding the marriage of Mr. and Mrs. Ga Nun void. There had never been the consent essential to a valid contract. No marriage had taken place. At most there had been an empty form devoid of meaning.

In this state of the law what did the legislature mean when they spoke of the intermarriage of the parents of an illegitimate child? It must have referred to a marriage, not to some supposed contract, not in fact made. Between the Ga Nuns there was a marriage or there

was none.  The courts have said there was none.  Their child, therefore, does not come within the act.  The opposite conclusion would result in a curious inconsistency. If there was an attempted marriage with a lunatic a child born before wedlock would be legitimate for all purposes.  A child born after marriage would be legitimate only as to the party who was sane.

The order of the Appellate Division and decree of the surrogate should be reversed, with costs in all courts payable out of the estate, and the matter should be remitted to the Surrogate's Court to enter a decree in accordance with this opinion.

Hiscock, Ch. J., Hogan, Cardozo, Pound, McLaughlin and Crane, JJ., concur.

Ordered accordingly.