In the Matter of the Estate of ALEXANDER MORTEN.

Surrogate's Court, New York County, June 28, 1927.

**Wills — trusts — will devised property in trust for benefit of wife with reduction of income on remarriage — clause against remarriage not violated by marriage subsequently declared void ab initio.**

A provision in a will devising property in trust to the testator's wife, which states that the income to be paid to the wife shall be reduced to a specified amount upon her remarriage, is not violated by the remarriage of the widow where such marriage is subsequently held by the courts to be absolutely null and void *ab initio.*

ACCOUNTING PROCEEDING involving construction of will.

*Laughlin, Gerard, Bowers & Halpin,* for Marjorie Morten.

*Frank W. Chambers,* for the trustees.

FOLEY, S. In this accounting proceeding the question presented is as follows: Do the terms of the will, which provide for the reduction of the widow's income in case she remarries, become effective if the widow remarries in fact, but her marriage is subsequently annulled as void *ab initio* by a court of competent jurisdiction? By the will of the testator the net income of the residuary trust was directed to be paid to his widow " during her lifetime, or until such time as she shall remarry." The will further directs that if the wife remarries the trustees are " to pay to her the sum of Three Thousand Dollars per year from such net income, and to pay the balance of such net income to the charitable institutions described in subdivision 4 of this paragraph." These nine certain charitable institutions are also named as remaindermen of the trust. The testator died in 1916. On July 5, 1924, the widow married one Clarence Edward Palmer at the British Consulate General at Naples, Italy. On February 7, 1927, the Probate, Divorce and Admiralty Division of the High Court of Justice of England, in an action for annulment of the marriage brought by Palmer against the widow of the decedent, made a decree adjudging " the said marriage to be and to have been absolutely null and void and that the said petitioner was and is free from all Bond of Marriage with the said Respondent," because of the wife's incapacity to consummate the marriage.

The question presented seems to be a novel one in this State. The research of counsel and the investigation of the authorities by the surrogate fail to disclose any precedent in the construction of a will where such an issue was determined. It might be contended, upon the construction of the will and the facts presented, that the testator intended to penalize his widow by a reduction in her income from the estate for the mere act of marrying. On this theory it may be asserted that he was concerned entirely with providing ample support for herself only and that he intended that her second husband should gain no benefit, temporary or permanent, from his estate. On the other hand, an alternative interpretation (which the surrogate has adopted as the proper construction of the will) presents itself as to the legal effect of the term " remarry " as used by the testator and as construed in the light of the decree of the court which pronounced the marriage void *ab initio*. Under the circumstances of this case I hold that the decree of annulment which rendered the marriage absolutely null and void in no way prevented the widow from receiving the full and undiminished income of the trust and that the widow is not limited, under the terms of the will, to receive the reduced allowance of $3,000 which the testator provided for on a condition which never occurred in

Surrogate's Court, New York County, May, 1927.     [Vol. 130

the contemplation of the law. While, as has hereinbefore been observed, no determination has ever been made with regard to a clause similar in substance and effect to that contained in this will, the authorities which deal with the effect of a decree of annulment of a marriage sustain this conclusion. In *Matter of Moncrief* (235 N. Y. 390) a child was born one day before the marriage of her parents. The marriage was subsequently annulled for duress and force. It was held that the marriage did not legitimize the child because the legal effect of the annulment was to render the status of the parties exactly the same as if they had never been married. The court said: "Chapter 531 of the Laws of 1895 provides that all illegitimate children whose parents have heretofore intermarried * * * shall be considered legitimate for all purposes. Did the parents here intermarry within the meaning of this clause? We hold that they did not." The court held that the marriage was void from the time of the determination, but when its judgment was rendered, the marriage was annulled from its inception and all the consequences "of a void marriage then followed." There never was any valid or legal marriage and there never has been "the consent essential to a valid contract. No marriage had taken place. At most there had been an empty form devoid of meaning." In view of the fact that the remarriage here took place under the jurisdiction of England and was annulled by the courts of that country, it is interesting to observe that the English authorities likewise support this conclusion. (*Matter of Garnett*, L. J. 74 Ch. Div. 570; *Matter of Wombwell's Settlement*, L. R. [1922] 2 Ch. Div. 298.)

I hold, therefore, that the widow is entitled to the full undiminished income of the trust and that the provision for a limitation of her income in case of her remarriage never became effective.

Submit decree on notice construing the will and settling the account accordingly.