**HOME OF the HOLY INFANCY, Petitioner,**

**v.**

**William S. KASKA, Jr., Respondent.**

**No. A–10705.**

Supreme Court of Texas.

Nov. 3, 1965.

Rehearing Denied Jan. 12, 1966.

Sneed & Vine, J. P. Darrouzet, Austin, for petitioner.

Coffee, Ritter & Goldston, Austin, for respondent.

WALKER, Justice.

The question to be decided in this case is whether a father has custodial or other rights in his child conceived before the marriage of the parents and born after the annulment of such marriage. The suit was instituted by William S. Kaska, Jr., the father, against Home of the Holy Infancy, defendant, seeking custody of the child and other relief. Summary judgment for defendant was rendered by the trial court on the basis of the pleadings and certain admissions by the plaintiff. The Court of Civil Appeals reversed such judgment and remanded the cause to the district court. 387 S.W.2d 944.

All facts alleged in the petition as well as those admitted by plaintiff in response to a request for admissions can be accepted as true for the purpose of this appeal. As previously indicated, plaintiff is the father of the child in question. He and the mother were ceremonially married on June 13, 1963. The mother was pregnant with the child at that time, and was unmarried when the child was conceived. After living with plaintiff for about two weeks following their marriage, the expectant mother left him and sought an annulment of the marriage.

Plaintiff consented to the annulment because he thought the child would be legitimate and also because the mother assured him that he could have the child when it was born. Judgment annulling the marriage on grounds of fraud, duress and coercion was rendered on September 6, 1963, and the child was born after the decree was entered. This judgment has now become final, and no attack is made thereon.

The mother disappeared after the annulment was granted, and it was some time before plaintiff was able to locate her. He persisted in his efforts and finally learned that she had placed the child for adoption with defendant, a duly licensed child place-ment agency, and that the child had been declared dependent and neglected under a fictitious name by the Juvenile Court of Travis County. Plaintiff had no notice of these proceedings, and the child was not, in fact, dependent and neglected. He discussed the matter with one of defendant's officials, who admitted that she knew of plaintiff's marriage to the child's mother and the subsequent annulment thereof, told plaintiff that defendant placed the child with a good Catholic family for adoption two days after birth, and refused to give plaintiff any information that might enable him to identify or locate the child. Plaintiff has not consented to the adoption of the child.

The Court of Civil Appeals reasoned that the case is not ripe for summary judgment because it is not clear from the allegations of the petition whether defendant has custody of the child. According to the parties, that is not the controlling question in this appeal. As they construe the petition, the suit is an action for custody of the child and, in the alternative, for an equitable bill of discovery to determine its name and whereabouts. Defendant admits that it may have either the child or the information sought by plaintiff. The only ground urged in support of the summary judgment is that plaintiff has no rights in the child and therefore is not entitled to maintain this suit.

Plaintiff recognizes, and we think properly so, that he has no standing to sue unless the child was legitimated by the marriage of its parents which was subsequently annulled. Many courts hold that the father of an illegitimate child is entitled to custody and control as against all but the mother, provided he is suitable and the best interests of the child will be served thereby. See 10 Am.Jur.2d Bastards § 62; Annotation, 37 A.L.R.2d 882. These decisions must be considered, however, in the light of the statutory and case law of the particular jurisdiction. The statutes of California, for example, make both parents responsible for the support of an illegitimate child, and

provide that the child will be legitimated if acknowledged by the father, received by the latter into his home and otherwise treated as a legitimate child. An award of custody to the father in that state is thus entirely consistent with his duty of support, and also conducive to legitimation under the statute. See Guardianship of Smith, 42 Cal.2d 91, 265 P.2d 888, 37 A.L.R.2d 867.

There are no similar statutes in Texas, and here a father is not under a common law or statutory duty to support his illegitimate child. See Lane v. Phillips, 69 Tex. 240, 6 S.W. 610; Beaver v. State, 96 Tex.Cr.Rep. 179, 256 S.W. 929, 30 A.L.R. 1073. The Legislature has expressly provided, moreover, that the father's consent shall not be necessary for the adoption of an illegitimate child. Article 46a, Vernon's Ann.Tex.Civ.Stat. There is an early decision holding that the father has a prior right to letters of guardianship where the mother is deceased, Barela v. Roberts, 34 Tex. 554, but it is one thing to permit the father to assume the responsibilities imposed by law upon a guardian and an entirely different matter to recognize rights of custody when there is no corresponding duty to support. We adhere, therefore, to the common law rule that a father has, by virtue of the blood relationship alone, no rights in his illegitimate child. See Timmins v. Lacy, 30 Tex. 115; Cleaver v. Johnson, Tex.Civ.App., 212 S.W.2d 197 (no writ); Re M., [1955] 2 Q.B. 479, 51 A.L.R. 2d 488. This brings us to the legitimation statute upon which plaintiff relies.

Section 42 of the Probate Code provides, in part, as follows:

" * * * Where a man, having by a woman a child or children shall afterwards intermarry with such woman, such child or children shall thereby be legitimated and made capable of inheriting his estate. The issue also of marriages deemed null in law shall nevertheless be legitimate."

The last sentence of Section 42 has no direct bearing on this case, because plaintiff's marriage was not one "deemed null in law" within the meaning of the statute. See Defferari v. Terry, 128 Tex. 521, 99 S.W.2d 290. Plaintiff contends that his child was legitimated by the first sentence quoted above, and consequently that he is entitled to maintain a suit for custody of or information concerning the child. There are a number of questions which must be resolved in determining whether that is the effect of the statute as applied to the facts of this case. The first question is whether Section 42 legitimates a child for all purposes or merely confers rights of inheritance.

The title of Section 42 as it appears in the Probate Code is "Inheritance Rights of Illegitimate Children," but it has been pointed out that this heading is a misnomer in so far as the last two sentences of the statute are concerned. See 8 Baylor Law Rev. 110. These provisions, which are quoted above, can be traced to Section 15 of a statute enacted by the Congress of the Republic in 1840. 2 Gammel's Laws of Texas 306. The original statute dealt generally with descent and distribution, but Section 15 provided only for legitimation of illegitimate children and made no reference to rights of inheritance. It was not until 1848 that the words "and made capable of inheriting his estate" were added. 3 Gammel's Laws of Texas 129.

There are differences in the legitimation statutes of the various states. Several provide that the child shall be deemed legitimate for all purposes from the time of birth. Even without this or some similar provision, most jurisdictions hold that the effect of the statute is to confer the status of a child conceived and born in lawful wedlock. See Allison v. Bryan, 21 Okl. 557, 97 P. 282, 18 L.R.A.,N.S., 931, and decisions there cited; 8 Baylor Law Rev. 110; I Speer, Marital Rights in Texas, 4th ed. 1961, § 132. "All the reciprocal responsibilities and duties of the parent-child relationship obtain be-

tween a father and his legitimated child." 10 Am.Jur.2d Bastards § 57.

The basic provisions of our legitimation statute were borrowed from a Virginia statute upon the same subject. See James v. James, Tex.Civ.App., 253 S.W. 1112 (wr. ref.). The Supreme Court of Appeals of Virginia has held that a child legitimated by their statute enjoys the same legal relationship with the father as a legitimate child, and that the father of a child born to a marriage deemed null in law may therefore be given custody upon annulment of the marriage. Henderson v. Henderson, 187 Va. 121, 46 S.E.2d 10. In reaching these conclusions, the court said:

"The language of our statute is clear, sweeping and direct. There are no words of limitation or qualification. The issue of marriages decreed null in law, without regard to the grounds of nullity, are legitimated. They are consequently endowed with all the rights of legitimate issue for all purposes and in their relation with other persons. They are put on a par with children born in lawful wedlock. They inherit their father's name, are his heirs apparent, and are entitled to look for and demand from him his care and protection. On the other hand, he has the right to their custody, control and maintenance to the same extent as if they were the issue of a valid marriage. * * *

"We have not construed section 5270 as solely a statute of inheritance. The precise question here raised has never before been presented to this court. It is true that section 5270 is found in the chapter of the Code, headed 'Descents and Distributions.' The section does relate to the right of inheritance; but that is only one of the rights it confers upon a legitimated child. It was not enacted for the purpose of relieving either parent of any legal or moral obligation to their child, but for the benefit of the child, and the child is entitled to all the benefits that flow therefrom. * * * *"

It has been held in this state that the father is entitled to custody of his child born to a putative marriage, and the Texas legitimation statute was cited in support of the holding. Templeton v. Walker, Tex. Civ.App., 179 S.W.2d 811 (wr. ref.). The question in James v. James, supra, was whether a legitimated child might inherit directly from the paternal grandparents. Speaking for the Court of Civil Appeals at San Antonio, Justice Smith pointed out that it was clearly the intention of the Legislature to provide for full legitimation and concluded that upon the marriage of the parents their child previously born was "thereby legitimated for all purposes."

To hold otherwise would do violence to the plain provisions of the statute. The first two sentences of Section 42 stipulate that "for the purpose of inheritance" and "for the purpose of determining homestead rights, the distribution of exempt property, and the making of family allowances," an illegitimate child shall "be treated the same as if he were the legitimate child of his mother." When the Legislature has expressed in such clear language its intention that an illegitimate child shall be treated as legitimate for certain limited purposes, the last two sentences obviously mean that the child shall be legitimated for all purposes when the specified conditions are satisfied. We hold that the legal relationship between a father and his legitimated child is the same as that existing between a father and his legitimate child.

Another problem of statutory construction is presented by the fact that plaintiff married the mother before the birth of their child. By its terms Section 42 applies "[w]here a man, having by a woman a child or children shall afterwards intermarry with such woman." It might be argued that legitimation occurs only when marriage follows the birth of the child, but this would leave a hiatus of several months in the statutory scheme. The Legis-

lature could not have intended that result, and it is certainly true that the father is "having by a woman a child" during the period of gestation. In our opinion the statute operates whenever a valid marriage occurs after conception of the child. See Gravley v. Gravley, Tex.Civ.App., 353 S.W. 2d 333 (wr. dis.). We now come to the last and most difficult question in the case.

Defendant insists that the statute has no application because the marriage was annulled. We generally think of an annulment as placing the parties in the same position as if they had never married. In Garcia v. Garcia, Tex.Civ.App., 232 S.W. 2d 782 (no writ), the court stated that a suit for annulment presumes that there never was a valid marriage and that it should therefore be declared void. According to the New York Court of Appeals, it is the rule of the common law that children born of a voidable marriage which is subsequently annulled are illegitimate unless legitimated by statute. See Price v. Price, 124 N.Y. 589, 27 N.E. 383, 12 L.R. A. 359. The same court has also held that a child conceived and born out of lawful wedlock is not legitimated by the subsequent marriage of the parents which is later annulled for duress even though the New York statute declares that marriages procured by force shall be void from the time their nullity is declared. Re Gilbert, 235 N.Y. 390, 139 N.E. 550, 27 A.L.R. 1117.

In more recent and better reasoned cases, the courts have recognized that the doctrine of relation back is a legal fiction which must be utilized with some discrimination where the annulment of a marriage is involved. See Bass v. Ervin, 177 Miss. 46, 170 So. 673; Taylor v. Taylor, 249 Ala. 419, 31 So.2d 579; Succession of Barth, 178 La. 847, 152 So. 543, 91 A.L.R. 408. A child conceived and born during the existence of a voidable common law marriage has been held to be legitimate despite the annulment of the marriage. Jones v.

Jones, 119 Fla. 824, 161 So. 836, 104 A.L.R. 1. The court reasoned that:

"The annulment of the now existing voidable common-law marriage status cannot bastardize the child, Charlotte May Jones, who was born prior to any decree of annulment, since the judicial decree setting aside a merely voidable marriage status does not operate retrospectively as against the legitimacy of children born to the parties where such children would have been considered legitimate under the annulled voidable common-law marriage prior to any decree of dissolution of same, had such annulment decree never been rendered."

The rule that an annulled marriage is void *ab initio* was also considered in Sefton v. Sefton, 45 Cal.2d 872, 291 P.2d 439, where the Supreme Court of California said: * * * [T]he doctrine of 'relation back' [with respect to annulments of marriages] is not without its exceptions. The doctrine was fashioned by our courts to do substantial justice as between the parties to a voidable marriage. It is a mere legal fiction which has an appeal when used as a device for achieving that purpose. The test for determining the applicability of the doctrine as applied to voidable marriages is whether it effects a result which conforms to the sanctions of sound policy and justice as between the immediate parties thereto, their property rights acquired during that marriage and the rights of their offspring. * * *

"* * * [I]n cases involving the rights of third parties, courts have been especially wary lest the logical appeal of the fiction should obscure fundamental problems and lead to unjust or ill-advised results respecting a third party's rights. Thus the exceptions to the theory of 'relation back' should have their typical application to situations affecting an innocent third party. * *

Logic has long ago yielded to principle in the solution of the problem of determining the status of the children of annulled marriages. While a strict application of the doctrine of relation would reach back to deprive those children of their legitimate status, they are, of course, protected against the stain of illegitimacy not only where the marriage is voidable * * * but also where the marriage is totally void."

The Florida statute provides that upon intermarriage of the parents their illegitimate child shall be deemed legitimate for all purposes, and the Supreme Court of that state has held that a child conceived and born out of wedlock was legitimated by the subsequent marriage even though the marriage was annulled about a year later. Re Ruff's Estate, 159 Fla. 777, 32 So.2d 840, 175 A.L.R. 370. The court observed that the child was not made a party to the annulment suit, and that the marriage was not void but only voidable. It concluded that so far as the legitimacy of the child was concerned, the annulment decree was effective as of the time when entered and did not render the marriage void *ab initio*.

There are a number of considerations which persuade us to adopt the Florida rather than the New York approach to this problem. As pointed out in James v. James, supra, legitimation statutes are enacted for the humane purpose of abrogating the harsh rule of the common law and should be liberally construed to effectuate their obvious purpose. The law favors legitimacy, and it is the public policy of our state as declared by the Legislature that the legitimacy of children shall not be affected by the divorce of their parents and that the issue of some utterly void marriages shall nevertheless be legitimate. See Article 4639, Vernon's Ann.Tex.Civ.Stat. The marriage in this case was not void but voidable. It was in all respects valid until set aside. If it had not been annulled, plaintiff's child clearly would be legitimate.

In our opinion the child should not be bastardized merely because the marriage was dissolved by annulment for antenuptial causes rather than by divorce for postnuptial causes.

The annulment decree may relate back to the time of the marriage as between the parties to the former suit, but it will not be given that effect in determining the legitimacy of their child. On the basis of the facts now before us, we hold that the child is legitimate and that plaintiff is entitled to maintain the present suit. This does not mean that he is entitled to custody of the child, because that question can be determined only after all of the facts have been fully developed.

The judgment of the Court of Civil Appeals is affirmed.